PIERCE STEAM HEATING COMPANY, Respondent, v. A. SIEGEL GAS FIXTURE COMPANY, Appellant.

St. Louis Court of Appeals, January 2, 1895.

1. **Sales:** RESCISSION FOR BREACH OF WARRANTY. If personal property does not conform to a warranty made in the sale of it, the buyer may rescind the sale and return the property, provided he does so within a reasonable time.

2. ————: ————: REASONABLE TIME. What is a reasonable time for that purpose is ordinarily a question of fact, and it is so when men may reasonably differ in regard thereto. But the circumstances may be so clear as to render it a question of law, and such it is held to be in this cause.

3. **Foreign Corporations:** APPLICATION OF LAW OF 1891. The statute of April 21, 1891, which prohibits the maintenance of any action in this state by a foreign corporation which fails to comply with its requirements, is leveled against resident foreign corporations, that is, foreign corporations permanently located in this state, and enjoying equal advantages of trade with domestic corporations, but bearing none of the public burdens imposed on the latter.

*Appeal from the St. Louis City Circuit Court.*—Hon. Leroy B. Valliant, Judge.

Affirmed.

*Hugh D. McCorkle* for appellant.

(1) Where there is a breach of warranty the vendee may rescind the contract and return in a reasonable time the thing sold, and after such rescission he may recover back anything which he may have paid on the purchase price. *Bronson v. Turner*, 77 Mo. 489; *Tower v. Pauley*, 51 Mo. App. 75; *Rogers v. Hanson*, 35 Iowa, 283; *Woodle v. Whitner*, 23 Wis. 55; *Bryant v. Isburgh*, 13 Gray, 607; *Marston v. Knight*, 29 Me. 341. (2) Before a foreign corporation can do business in this state it must comply with the section of the statute entitled, "An act, to require foreign corporations doing business in this state to have a public office in the state * * * to file its charter or articles of incorporation * * * and to pay certain taxes and fees. If it fails to do so, it will be prohibited by section 3 of said statute from maintaining any suit in the courts of this state." Sess. Acts, 1891, p. 76, sec. 2 and 3.

*Mills & Flitcraft* for respondent.

(1) The contract was not rescinded within a reasonable time, as a matter of law. *Branson v. Turner*, 77 Mo. 489; *Johnson v. Whitman Agr. Co.*, 20 Mo. App. 100; *Skeen v. Springfield Eng. Co.*, 34 Mo. App. 485; *State ex rel. Cuomo v. Hall*, 45 Mo. App. 303; *Tower v. Pauley*, 51 Mo. App. 75; *Viertel v. Smith*, 55 Mo. App. 617. (2) The statute of 1891 does not affect the plaintiff's right to sue. *Railroad v. Fire*

*Ass'n*, 55 Ark. 163; 18 S. W. Rep. 43; *Collier v. Davis*, 94 Ala. 456; *Reeves v. Harper*, 43 La. Ann. 516; Murfree Foreign Corporations, secs. 65, 92, 42; *Ware v. Hamilton-Brown Shoe Co.*, 92 Ala. 145; *Cooper Mfg. Co. v. Ferguson*, 113 U. S. 727; *Fritz v. Palmer*, 132 U. S. 282; *White River Lumber Co. v. S. W. Imp. Ass'n*, 55 Ark. 625; *N. Y. Life Ins. Co. v. Stone*, 42 Mo. App. 383; *Am. Ins. Co. v. Smith*, 73 Mo. 368; *Windsor v. McVeigh*, 93 U. S, 274, 277.

BIGGS, J.—The plaintiff sued the defendant for the purchase price of a number 6 boiler, sold November 8, 1890, to be used in a church in the city of St. Louis; also for the price of a number 8 boiler, sold December 9, 1890, which was shipped to Fort Worth, Texas. The account sued on also includes a bill for supplies. The plaintiff is incorporated under the laws of the state of New York. The articles sued for were ordered by mail from St. Louis, the defendant's place of residence. The articles were placed on board of the cars at Buffalo, New York, and defendant paid the freight.

The answer is a general denial. It also pleads in bar of the action that the plaintiff had failed to comply with the law of this state, which requires all foreign corporations doing business in this state to file its articles or charter of incorporation, etc. (Laws, 1891, p. 75). The answer also set up a counterclaim to recover back the purchase price of another boiler, which had been previously sold by the plaintiff to the defendant. The judgment was for the plaintiff on its demand, and against the defendant on its counterclaim. The defendant has appealed.

As to the number 8 boiler and the supplies, there was no dispute on the trial. The defendant claimed that the number 6 boiler did not answer the purposes

for which it was bought and warranted, but the plaintiff's evidence tended to prove that the radiation and piping attached to the boiler required more service than the plaintiff's catalogue represented that a number 6 boiler could perform. The jury found this issue in favor of the plaintiff, and the defendant makes no complaint of that here. So the only matters of assignment on this appeal pertain to the defendant's counterclaim and the right of the plaintiff to sue.

The defendant's counterclaim is based on an attempted rescission of the sale of the first boiler, and its return to the plaintiff. The evidence of the defendant tended to prove that the boiler was represented by the plaintiff to have the capacity to supply direct radiation of seven hundred square feet, whereas its capacity was only four hundred square feet, which made it entirely inadequate for the building for which it was purchased; that the boiler was ordered in December, 1889, and was shipped from Buffalo in the state of New York to Fort Worth, Texas, on the twenty-third day of January, 1890; that in February it was placed in the cellar of the building, which was then unfinished, and which was not completed until the following summer; that there was no opportunity to test the boiler until November, when it was found insufficient in the manner stated, and that in February, 1891, it was shipped back to the plaintiff.

The plaintiff's evidence as to the counterclaim tended to prove that the piping attached to the boiler required more of the boiler than it was represented as capable of performing, and that the mistake was with the defendant in not ordering a larger boiler; that in May, 1890, the defendant made an assignment for the benefit of its creditors, and, in order to enable it to resume business, it presented to its creditors a compromise agreement which the plaintiff signed, and that,

in pursuance of that agreement, the plaintiff accepted forty per cent. of the purchase price of the boiler in full satisfaction of the account.

The defendant complains of the refusal of the following instruction as to its counterclaim: "The court instructs the jury that, if the jury believe and find from the evidence that on the——day of——1889, plaintiff sold a number 6 direct draft boiler to defendant without any of the officers or agents of defendant having previously examined, tested or tried, said boiler, and that the said boiler was purchased by defendant by number or description, and that said number and description were contained in a certain catalogue issued by plaintiff prior to the time of said purchase, and that said catalogue had come into the hands of said defendant, and that the description contained in said catalogue represented and held out that said boiler was capable of supplying seven hundred square feet of direct radiation under favorable circumstances, and that it was simple in construction and not likely to get out of order; and if the jury further believe and find from the evidence that said boiler was shipped to defendant and that it could not be immediately tested and tried; and that pending the time when the examination, test or trial, could take place, plaintiff charged the said boiler to defendant at $151.20, and that said charge or price was settled and paid by compromise with plaintiff for $60 before such examination or test could be made; and if the jury further find from the evidence that afterwards the said boiler was carefully examined, tested and tried, by the defendant, and that it proved incapable of supplying seven hundred square feet of direct radiation under favorable circumstances, and that the amount of direct radiation that the said boiler could supply was only four hundred square feet of direct radiation under favorable circumstances, and that said boiler by said

test proved to work improperly and to get out of order easily; and if the jury further believe and find from the evidence that said boiler by said trial and test proved to be not reasonably fit for the ordinary purposes for which steam heating boilers are used, and that said boiler was unsaleable and unmerchantable; and if the jury further believe and find from the evidence that defendant, within a reasonable time under the circumstances in evidence after receiving said boiler and trying it and testing it as aforesaid, did reject said boiler and rescind said sale and return said boiler to plaintiff; then the jury are instructed that they should find for the defendant, and assess his damages in the sum of $60 in respect to said item in defendant's counterclaim.''

If the boiler was not up to the warranty, the defendant undoubtedly had the right to return it, provided he acted seasonably; that is, to entitle him to a rescission it was his duty to test the boiler as soon as the test, under the circumstances, could be made, and, if it proved not as represented, to promptly notify the plaintiff of his intention to reject it. The following observation of Judge ANDREWS in the case of *Pierson v. Crooks*, 115 N. Y. 539, 551, is pertinent: ''It is the duty of a purchaser to act promptly in making an examination of goods sent upon his order, to see whether they comply therewith, and to give prompt notice to the vendor of their rejection, if found defective, if he intends to avail himself of that remedy. * * * Indeed, it stands upon the most obvious justice and equity, that the seller should be apprised promptly if there is any objection and the vendee intends to reject the goods, so that he may retake possession or resell the goods and save himself, as far as practicable, from loss. But the vendee has a reasonable time for examination and to give notice, and what

is a reasonable time is usually a question of fact and not of law, to be determined by the jury upon all the circumstances, including as well the situation and liability of injury to the vendor from delay, as the convenience and necessities of the vendee."

Whether the boiler here in controversy was tested and returned within a reasonable time, counsel for defendant insist was a question of fact for the jury to determine. If counsel are right in this, then the defendant's instruction ought to have been given. The general rule undoubtedly is that, what is "reasonable time" in such cases is a question of fact for the jury. But the rule has its limitations. The delay may be so short that the court will be warranted in declaring, as a matter of law, that the article *was* tested and returned within a reasonable time; or the delay may be so great as to impose the duty on the court of declaring that the article was *not* tested or returned within a reasonable time. *Johnson v. Agricultural Co.*, 20 Mo. App. 100. On the other hand, if the question is one about which men may reasonably differ, then it is a question for the jury. *Tower v. Pauly*, 51 Mo. App. 75.

Now, in the present case, it may be conceded that no proper test of the heating capacity of the boiler could have been made until November, 1890. But the boiler was not returned until February following. There is no evidence that the plaintiff was notified of the failure of the boiler to do its work, and no valid excuse is offered by the defendant for the delay of three months in returning it. Under these circumstances, the circuit court was justified in deciding, as a matter of law, that the defendant did not act seasonably in the premises, and the court was, therefore, justified in refusing its instruction. Whether under the

facts a suit on the warranty could be maintained we need not decide, as no such case is presented.

The other contention, that under the law of 1891 the plaintiff can not maintain the action, must also be overruled. That law provides, in substance, that foreign business corporations (except insurance companies and railroad companies already operating railroads within this state) transacting business in this state shall establish public offices in this state for the transaction of business, and shall file with the secretary of state a copy of their charters or certificates of incorporation, etc. If any such corporation shall fail to comply with the above requirements, then it can not maintain an action in this state arising out of contract or tort. Counsel misconceive the purpose of the law. It is leveled against *resident* foreign corporations; that is, foreign corporations *permanently located* in this state, and that are enjoying equal advantages of trade with domestic corporations, but bearing none of the public burdens imposed on the latter. The act itself expressly excludes from its operation business transacted or contracts made by "traveling salesmen soliciting business in this state for foreign corporations which are *entirely nonresident.*" This shows clearly the limitation of the act, and it is clear that the present case falls outside of its provisions. The orders for the goods were sent by mail from St. Louis, and there is no pretense that the plaintiff is *permanently located* in this state for the purpose of prosecuting its business. We had occasion, in the recent case of *Williams v. Scullin*, 59 Mo. App. 30, to construe and apply the act. In the opinion, on motion for rehearing, it was said: "In regard to contracts entered into in this state by a resident foreign corporation for pecuniary gain, the invalidity attaches to the contract, as the validity of the contract is determined by the laws of the state

where it is made if that be also the place of its performance. But, since the laws of the forum determine the remedy, the legislature in very plain terms informed the tramp corporations, which *locate* in this state, and thus become *resident* here, that unless they comply with the requirements of the statute, they can not invoke the aid of our courts to enforce a contract made by them anywhere."

Finding no error in the record, the judgment of the circuit court will be affirmed. All the judges concur.