## TILSON *v.* GATLING.

Opinion delivered January 5, 1895.

*Constitutional law—Patent-right notes—Defenses.*

> The act of April 9, 1891 (Sand. & H. Dig., sec. 492), which pro-
> vides that "the payer and drawer in all notes, drafts and bills
> of exchange, executed or drawn in payment of any patent
> right or patent right territory shall be permitted to make all
> the defenses against any assignee, endorser (endorsee), holder
> or purchaser of such note, draft or bill of exchange, that could
> have been made against the original payee or drawee, whether
> such note, draft or bill of exchange be assigned or transferred

before maturity or not," is not in conflict with sec. 8 of art. 1 of the constitution of the United States relating to the granting of patents.

Appeal from Miller Circuit Court.

RUFUS D. HEARN, Judge.

### STATEMENT BY THE COURT.

The appellee, Gatling, bought of E. Poole two promissory notes for one hundred dollars each, executed by the appellants, payable to the order of said Poole, each dated Fordyce, Ark., July 1, 1891, due respectively at six and twelve months from their date. They were indorsed by Poole, "Pay John A. Gatling." Gatling sued appellants, and recovered a judgment before a justice of the peace upon the notes. They appealed to the circuit court. No consideration was expressed in the notes except "value received." On the trial, Gatling testified that he knew, before he purchased the notes, that the consideration for which they were given was the sale of a patent right, and that he purchased them before maturity. The appellants read in evidence the deed of assignment by Poole to them for the patent right. J. H. Harper, one of the appellants, then testified that "the notes sued on were given for an interest in the supposed patent   *   *   *   *   upon the representation of Poole, the pretended patentee and payee of the notes, that the government had issued such patent to him; also that a Chicago firm of capitalists had erected a large manufacturing establishment for the purpose of manufacturing the window shades described in the patent;" and further testified "that in fact Poole, the alleged patentee and payee of the notes, had never obtained any such patent from the government for the window shades and things described in the pretended patent and deed to the defendant; that Poole's representations were false; that no manufactory had ever

been established in Chicago, or elsewhere, to manufacture the window shades described in the deed, and that such representations by Poole were false ; that Gatling had admitted to witness that he knew, when he purchased said notes, that the consideration for which they were given was a patent right issued by the government." The plaintiff objected to the admissibility of the testimony, and the court withdrew it, and excluded it from the jury, upon the ground that it did not show that the plaintiff knew, before purchasing the notes, that Poole was guilty of fraud in obtaining them, to which action of the court the defendants at the time excepted. The overruling of the exceptions to the exclusion of this testimony is made a ground of the motion of appellants for a new trial, which was overruled, to which appellants excepted, and appealed to this court.

*John Hallum* for appellant.

1. The act of April 23, 1891, is not obnoxious to the constitution of the State or United States. Four northern States have held similar acts unconstitutional, as have two federal judges. 53 Ind. 454 ; 54 *id.* 270 ; 2 Bissell, 309 ; 70 Ill. 109 ; 37 Mich. 309 ; 23 Minn. 24. But the weight of authority, and the better reasoning, is the other way. 11 Bush, 311 ; 97 U. S. 510 ; Cooley, Const. Lim. 574 ; 9 Wheat. 1 ; 37 Mich. 309 ; note to 26 Am. R. p. 517 ; 7 Cush. 84 ; 3 Wall. 730 ; 95 U. S. 465 ; 4 Oh. 295 ; 1 Har. 65 ; 11 Wall. 124 ; dissenting opinion of Judge Miller in 6 Wall. 166.

2. It was error to exclude the testimony that Gatling *knew* the notes were given for a pretended patent.

*Scott & Jones* for appellee.

The act is unconstitutional. 70 Ill. 109 ; 37 Mich. 309 ; 23 Minn. 24 ; 43 Ind. 167 ; 25 Fed. 394 ; 43 Wis. 403 ; 53 Ind. 454 ; 6 Am. Law Rec. 236 ; 18 Am. & Eng. Enc. Law, p. 65 ; 11 Bush, 220.

HUGHES, J., (after stating the facts.) The court erred in excluding from the jury the testimony set out in the foregoing statement of facts, which tended to show a total want of consideration for the execution of the notes by appellant, and that their execution was procured by the fraudulent representations of Poole, the payee and endorser of the notes to appellee, Gatling. It is true that the proof shows that Gatling bought the notes before maturity, and, according to the general rule governing the liability of a maker or indorser of a negotiable instrument indorsed before maturity, the maker could set up no defense against a suit to enforce payment by the indorser if he was a purchaser in good faith before maturity; for, as has been said, a negotiable instrument is a "courier without luggage." But the general rule of the law merchant does not govern in this case, but it is governed by "An act to amend section four hundred and seventy-six (476) of Mansfield's Digest of the statutes of this State," which provides (section 1) that "nothing in the preceding section shall apply to a bill of exchange or negotiable promissory note transferred in good faith and for value before maturity, but such instrument shall be governed by the rules of the law merchant, concerning commercial and negotiable paper. *Provided*, the payer and drawer in all notes, drafts and bills of exchange, executed or drawn in payment of any patent right or patent right territory, shall be permitted to make all the defenses against any assignee, endorser, holder or purchaser of such note, draft or bill of exchange, that could have been made against the original payee, or drawer, whether such note, draft or bill of exchange be assigned or transferred before maturity or not." Approved April 9, 1891. Acts 1891, p. 261; Sand. & H. Digest, sec. 492. If this act is constitutional, it is conclusive of the question under consideration.

That such an act does not violate sec. 8, art. 1, of the constitution of the United States, giving to Congress the power "to regulate commerce with foreign nations, and among the several States," etc., and "to promote the progress of science and useful arts, by securing, for limited times, to authors and inventors the exclusive right to their respective writings and discoveries," we think is settled by the better reason, and the weight of authority. A well considered case involving the constitutionality of a similar act, in substance, is *Tod* v. *Wick* 36 Ohio State, 370. The note sued upon that case, omitting the date, was as follows : "$5000. Twelve months after date, I promise to pay to the order of H. H. Forbes five thousand dollars at First National Bank of Youngstown, O., value received, with interest, six per cent. Henry Tod." The defense was interposed that this note was given for an interest in a pretended patent right, without the words, "Given for a patent right" written or printed in the note, as required by the statute of Ohio, and that the plaintiffs, at the date of their purchase of the note from the payee, were cognizant that the same was given for an interest in such patent. The plaintiffs denied knowledge that the note was given for an interest in a patented invention, and alleged that they bought the note before due, in the usual course of trade, for value, in ignorance of any defect therein. The supreme court of Ohio said, in considering the act, that "the whole purpose of the act, as stated in *State* v. *Brower*, 30 Ohio State, 101, was 'to enable the makers of negotiable instruments given for patent rights to make the same defense thereon, against any holder thereof, that could be made against the original holder or party to whom it was given.'" And it was held by the court, in effect, that the rights which the act of the State was intended to secure to the maker of the note were not repugnant to the rights of the patentee, under

the act of Congress, and that the end of the statute of the United States was to encourage useful inventions, and to hold forth, as inducements to the inventor, the exclusive use of his invention for a limited period of time; that the sole operation of the statute is to enable him to prevent others from using the products of his labors, except with his consent; but that "his own right of using is not enlarged or affected;" citing the cases of *Jordan* v. *Overseers*, 4 Ohio, 295, and *Patterson* v. *Kentucky*, 97 U. S. 501, where the principles governing such cases are discussed. In the case of *Tod* v. *Wick*, *supra*, it is said : "The right of property in a patented invention or discovery, and a right of property in any other article or thing which is the subject of ownership, are the same. The *jus disponendi* belongs to both. The owner of either has the complete right to sell or give away the entire interest that he possesses. With this right the statute in no wise interferes. But the legislature, in our judgment, has as complete power to withdraw from negotiable paper that quality which protects an indorsee against defenses existing against the payee or indorser, where the same was given for an interest in a patented invention, as where the same was given for any other kind of property." With the reasoning and authority of this case we are satisfied, and we hold that, for the error in excluding the testimony referred to, the judgment must be reversed, and the cause remanded for a new trial; and it is so ordered.