### The Eclipse Wind Engine Company *v.* Zimmerman Manufacturing Company.

[No. 1,768. Filed Oct. 22, 1896. Rehearing denied Dec. 30, 1896.]

PATENTS.—*Sale of Patent Right.—Statute Construed.*--Appellant was the owner of a certain patent right which it claimed was infringed by appellee through using certain improvements upon windmills which it made and sold. To release all liability and to provide against future liabilities, the parties entered into a written agreement by the terms of which in consideration of $2,000, for which notes were given, appellant released appellee from all damages accrued and "granted and licensed" the appellee company to continue the manufacture of the windmills as theretofore with the patented improvement. *Held,* in an action on the notes, that the notes were not given for a patent right within the meaning of section 8130, Burns' R. S. 1894, requiring that notes given for a patent right shall contain the words "given for a patent right." *pp. 496-501.*

SAME.—*Sale of Patent Right.*—The sale of an unexclusive right to utilize an invention is not a sale of a patent right within the meaning of section 8130, Burns' R. S. 1894. *p. 501.*

From the DeKalb Circuit Court. *Reversed.*

*Allen Zollars* and *C. H. Worden,* for appellant.

*C. S. Denny, R. W. McBride, J. W. Baxter* and *C. M. Brown,* for appellee.

GAVIN, J.—The jurisdiction of this court over this cause must be regarded as settled by the Supreme Court's order. The petition for rehearing upon the motion to transfer is accordingly overruled. The questions presented in this case arise upon the special findings of the court with the conclusions of law thereon.

In 1889 appellant was the owner of a certain patent

The Eclipse Wind Engine Co. *v.* Zimmerman Manufacturing Co.

right, which it claimed was infringed by appellee through using certain improvements upon windmills which it made and sold. To release all liability for past damages and to provide against future liabilities, the parties entered into a written agreement by the terms of which, in consideration of $2,000.00, appellant released appellee from all damages accrued and "granted and licensed" the said Zimmerman Manufacturing Company to manufacture windmills of the same general form and construction as those now manufactured by it, and containing said patented improvements. In a further clause of the contract it was declared "that under the terms of this license the said Zimmerman Manufacturing Company shall have the right to manufacture windmills of the general type now made by it at Auburn, Indiana, or if said company shall cease manufacturing at Auburn, then at any other one point in the State of Indiana." Notes were given for the $2,000.00, and the appellee continued to manufacture and sell windmills of the same general form and construction as those before made by it. The notes did not contain the words "given for a patent right," nor had appellant filed in the clerk's office of the county duly authenticated copies of its letters patent, nor the affidavit required by section 8130, Burns' R. S. 1894 (6054, Horner's R. S. 1896).

For want of compliance with the statute the court held the notes unenforcible.

The sections of the statute relating to the question under consideration are as follows:

Section 8130, Burns' R. S. 1894 (6054, Horner's R. S. 1896). "It shall be unlawful for any person to sell or barter, or to offer to sell or barter, any patent right, or any right which such person shall allege to be a patent right, in any county within this State, without

first filing with the clerk of the court of such county copies of the letters patent, duly authenticated, and, at the same time, swearing or affirming to an affidavit, before such clerk, that such letters patent are genuine, and have not been revoked or annulled, and that he has full authority to sell or barter the right so patented; which affidavit shall also set forth his name, age, occupation and residence, and, if an agent, the name, occupation, and residence of his principal. A copy of this affidavit shall be filed in the office of said clerk, and said clerk shall give a copy of said affidavit to the applicant, who shall exhibit the same to any person, on demand."

Section 8131, Burns' R. S. 1894 (6055, Horner's R. S. 1896). "Any person who may take any obligation, in writing, for which any patent right, or right claimed by him or her to be a patent right, shall form the whole or any part of the consideration, shall, before it is signed by the maker or makers, insert in the body of said written obligation, above the signature of said maker or makers, in legible writing or print, the words 'given for a patent right.' "

Section 8132, Burns' R. S. 1894 (6056, Horner's R. S. 1896). "Any person who shall sell or barter, or offer to sell or barter, within this State; or shall take any obligation or promise, in writing, for a patent right, or for what he may call a patent right, without complying with the requirements of this act; or shall refuse to exhibit the certificate when demanded, shall be deemed guilty of a misdemeanor, and, on conviction thereof before any court of competent jurisdiction, shall be fined in any sum not exceeding one thousand dollars, or be imprisoned in the jail of the proper county not more than six months, at the discretion of the court or jury trying the same, and shall be

liable to the party injured, in a civil action, for any damages sustained."

The instrument referred to clearly confers upon appellee no interest in the patent itself. It is a mere license by which appellee acquired the privilege of making and using the patented improvement upon the windmills it manufactured, together with the right to sell such windmills thus constructed. It was stated in *Ft. Wayne, etc., R. R. Co.* v. *Haberkorn*, 15 Ind. App. 479, that "A patent is a grant to the patentee, his heirs and assigns, for a stated period, of the exclusive right to make, use, and vend the invention, or discovery, throughout the territory of the United States. The patentee may, by writing, assign or convey an entire or partial interest in the patent by conveying: first, the whole patent, comprising the exclusive right to make, vend, and use the invention throughout the United States; or, second, an undivided right or share of that exclusive right throughout this entire country; or, third, the exclusive right under the patent within a specified part of the United States. A transfer of either of these three kinds of interests is an assignment, properly speaking, and vests in the assignee a title to so much of the patent itself. Any assignment or transfer short of one of these is a mere license, giving the licensee no interest in the patent. A transfer, or grant of a right to make and use a patented appliance upon a particular machine, or number of machines or cars, could not, then, be more than a license to so make and use it within such fixed limits. *Waterman* v. *MacKenzie*, 138 U. S. 252; *Mitchell* v. *Hawley*, 16 Wall. 544, Walker Pat., section 296; Robinson Pat., section 806."

Can the granting of such a license be deemed a sale of the patent right within the meaning of these statutes?

The proposition herein involved has not been passed upon directly by any other court so far as we have been advised The constitutionality of such laws has been the subject of much conflict among the various courts; some uphold laws more or less similar. *Tod* v. *Wick*, 36 Ohio St. 370; *Herdic* v. *Roessler*, 109 N. Y. 127, 16 N. E. 198; *Tilson* v. *Gatling*, 60 Ark. 114, 29 S. W. 35; *Haskell* v. *Jones*, 86 Pa. St. 173, uphold note clauses. *Reeves* v. *Corning*, 51 Fed. 774, sustains the requirements as to duly authenticated copies, but disapproves the note clause. *Mason* v. *McLeod*, 57 Kan. 105, 45 Pac. 76.

Others declare them to be in conflict with the federal laws upon a subject over which federal authority is supreme. *Hollida* v. *Hunt*, 70 Ill. 109; *Crittenden* v. *White*, 23 Minn. 24; *Castle* v. *Hutchinson*, 25 Fed. 394; *Cranson* v. *Smith*, 37 Mich. 309; *Wilch* v. *Phelps*, 14 Neb. 134; *Ex Parte Robinson*, 2 Bissell 309.

It is not our province to enter upon a consideration of this much mooted question. We must accept as final the repeated later adjudications of our own Supreme Court which recently said in *Sandage* v. *Studebaker Bros. Mfg. Co.*, 142 Ind. 148: "Counsel for appellant urge that this statute is in conflict with the federal constitution and therefore void. This question has been settled to the contrary in this State, and is no longer an open question. *New* v. *Walker*, 108 Ind. 365; *Hankey* v. *Downey*, 116 Ind. 118; 1 L. R. A. 447; *Pape* v. *Wright*, 116 Ind. 502.

The peculiar characteristic of a patent right is its quality of exclusion. The right bestowed by a patent is that of excluding all others from enjoying the benefit of the invention. The right of the patentee either to use it himself or to sell it, he possesses naturally and without any patent. *Herdic* v. *Roessler, supra; Tod* v. *Wick, supra.*

The Eclipse Wind Engine Co. *v.* Zimmerman Manufacturing Co.

When he has granted to another a part of this right of exclusion, he has conveyed away a portion of his patent right, an interest therein.

In *Bloomer* v. *McQuewan*, 14 How, (U. S.) 539, it is said: "The franchise which the patent grants, consists altogether in the right to exclude every one from making, using, or vending the thing patented, without the permission of the patentee. This is all that he obtains by the patent. And when he sells the exclusive privilege of making or vending it for use in a particular place, the purchaser buys a portion of the franchise which the patent confers. He obtains a share in the monopoly."

Unless the purchaser by the transaction acquires an interest in the "patent right" we are unable to see how there can be said to have been a sale of the patent right. It would be an anomalous condition if we should declare that the patentee had sold his patent right in whole or in part, while he still remained the sole owner of the patent. This, however, is the result to which appellee's contention would lead us, because, as we have already seen, a licensee does not by his license acquire any interest in the patent, but merely an unexclusive right to utilize the invention. The distinction between the franchise or monopoly which the patent gives him, and the invention itself to which the inventor is fully entitled either for use or sale without the patent, is elaborated and made plain in Robinson on Patents, section 753, *et seq.*

That the statute contemplates the sale of some exclusive right which would amount to an interest in the patent itself is plainly indicated by the language of Judge Elliott in *New* v. *Walker*, *supra*: "Where it is evident that the intention of an instrument is to vest in the assignee the whole and exclusive interest in a patent right for a designated territory, no ingenuity

in framing the instrument will carry the transaction beyond the reach of the statute. * * * In the case before us, there was a grant of all the beneficial interest that the patentee possessed [in the territory named], and the case is, therefore, within the statute." It is clear from the entire opinion in that case that the transfer was of such an exclusive right within certain defined territory as would constitute an interest in the patent. An examination of the original record confirms this view. While the contract may have been in form a license, it was in fact a conveyance of an interest in the patent and the court regarded not the form, but the substance, and gave effect to it as such. The distinction between a sale of a patent and a license under it is recognized in *Union, etc., Co.* v. *Johnson, etc., Co.*, 10 C. C. A. 176, 61 Fed. 940.

In some states where such statutes have been sustained, viz.: Ohio, Pennsylvania, and New York, the language of the acts is broader than ours, expressly including any right to make, use or vend, but it is also to be observed that in the cases upholding the law it is affirmed that the only effect of non-compliance with the statutes in those states (so far as affects the civil rights of the parties with which we are now concerned), is to make the notes, in the hands of those having knowledge of the consideration, open to such defenses as may exist.

In the cases of *Robertson* v. *Cooper*, 1 Ind. App. 78, and *State Nat. Bank* v. *Bennett*, 8 Ind. App. 679, the question here considered was not raised by counsel nor passed upon by the court.

Counsel for appellee very ingeniously argue that whenever the patentee bestows upon another any portion of the right which would otherwise rest in the patentee, that there is a sale of a "patent right" within the meaning of the statute. Were we to give the stat-

ute this far-reaching construction then the sale of every patented article by the patentee would fall under the ban of the law, unless there was compliance with this statute, because, as stated in *Mitchell* v. *Hawley, supra*, where a patentee has himself constructed and sold a patented article, or authorized another so to do, "the rule is well established that the patentee must be understood to have parted to that extent with all his exclusive right." It will be noted that the court places a sale of the patented appliance, and a license to another to make and sell it, as we have in this case, upon the same footing and considers them together. Our own court, however, has decided that the statute does not apply where there has been a sale of the article itself. *Hankcy* v. *Downey*, 116 Ind. 118.

Thus it is plain that that construction is too broad which would apply the statute to every instance where the patentee has waived his own right of exclusion and bestowed upon another a right which, but for that bestowal, he would not be privileged to exercise.

We feel, therefore, both authorized and required to give to this statute that construction which gives to the language used a meaning consistent with all our decisions and with the ordinary legal significance of the terms used therein, and accordingly hold that it applies only to cases where some interest in the patent right is transferred, and not to mere non-exclusive licenses.

Keeping in mind the fact that by this statute the vendor's right of recovery is lost, even though the vendee may have received full value, we ought not, by construction, to extend it beyond what it appears upon its face to contemplate when fairly and reasonably construed. If it be wise and beneficial to the people that it should be so extended, the remedy is easily attain-

able by appeal to the legislature. We, however, are not able to see any good reason why we should strain the law to enable a party to defeat an obligation to which it makes not even a pretense of a defense upon its merits.

So far as concerns the civil rights and obligations of the parties, we fail to discern how the view of the law taken by us lessens the rights of any one really entitled to protection. If, without a compliance with the statute, the note is made payable in bank, it is valid, under our adjudications, in the hands of an innocent holder, notwithstanding the violation of the law. If it is not payable in bank, or is not in the hands of an innocent holder, then the maker is entitled to the benefit of any defense which he may have.

Judgment reversed, with instructions to restate the conclusions of law, and render judgment in appellant's favor.