AMMONS VS BRUNSWICK-BALKE COLLENDER CO.

Opinion delivered October 19, 1904.

1. *Summons—Irregularity Does not Invalidate.*

The failure of a summons to contain the words, "under the penalty of the complaint being taken for confessed" as prescribed by Sec. 4968 Mansf. Dig. (3173 Ind. Ter. Stat.) is a mere irregularity of form, and does not invalidate the summons.

2. *Parties—Appearance—Continuance by Agreement a General Appearance.*

Where, after a motion to quash summons is overruled, the parties agree, to a continuance by a stipulation which waives all irregularities in the original process, the overruling of motion to quash cannot thereafter be urged as error.

3.  *Foreign Corporations—When Doing Business—Appointment of Agent not Required.*

> Act of Cong.Feb. 18, 1901, requires foreign corporations before carrying on business in the Indian Territory to appoint an agent upon whom process may be served. *Held,* that a foreign corporation doing a single act of business within this Territory is not "carrying on business" within the meaning of this statute.

Appeal from the United States Court for the Central District.

WILLIAM H. H. CLAYTON, Judge.

Action by the Brunswick-Balke Collender Company against J. H. Ammons. Judgment for plaintiff. Defendant appeals. Affirmed.

On May 24, 1902, the plaintiff below (appellee here) filed its complaint, and states it is a corporation, and for cause of action against the defendant (appellant here) alleges that in February and March, 1902, it sold and delivered, at its offices in Chicago, Ill., to defendant, certain personal property described; that to secure the purchase money for the same defendant executed and delivered to plaintiff his mortgage dated February 26, 1902, on certain property described, and that on or about March 31, 1902, said defendant executed and delivered to plaintiff his mortgage on certain property described; that by the terms of said mortgages, upon default of payment of certain sums of money, plaintiff was given the right of possession of said property; alleges that default had been made, and possession demanded and refused, and asks judgment for possession of said property, or its value, and $50 damages. On June 5, 1903, defendant filed his answer, and admits he purchased the goods described, but he avers that the plaintiff is a foreign corporation, and was at the time of the sale of said goods, and that the plain-

tiff had not at that time and has since failed and refused to file
its certificate, under the hand of its president, in the office of the
clerk of the Court of Appeals in the Indian Territory, and desig-
nate an agent upon whom process, may be served, and that the
said plaintiff has been carrying on a business in the Indian Terri-
tory within the contemplation of the acts of Congress regulating
the terms upon which foreign corporations may do business in
the Indian Territory; that the said goods were by the plaintiff
shipped to its agent in the city of South McAlester, to wit, the
First National Bank of South McAlester, and were by it delivered
to defendant; that the said sale and the said delivery of the said
goods was made within the Indian Territory; and that the said
plaintiff, by reason of its failure to comply with the said acts of
Congress regulating the manner and terms upon which foreign
corporations may do business in the Indian Territory, cannot
collect its bill, and this contract is therefore void; and asks that
case be dismissed, with his costs.   On June 6, 1903, plaintiff filed
its reply, and admits it is a foreign corporation, but denies that
"the said plaintiff had been carrying on a business in the Indian
Territory within the contemplation of the acts of Congress," and
further denies "the said sale and the said delivery of the goods
were made within the Indian Territory."   On June 18, 1903,
the case was tried by the court sitting as a jury, who found the
issues for the plaintiff, and rendered the following judgment:
"It is therefore considered, ordered, and adjudged by the court
that the plaintiff have and recover of and from defendant, J. H.
Ammons, the following property or its value, to wit:   (Property
heretofore described in complaint); all of the value of $443; and
all costs laid out and expended by the plaintiff in this suit, for
which execution may issue—to which judgment the defendant
excepts."   On June 20, 1903, defendant filed his motion for new
trial.   On June 28, 1903, the court overruled defendant's motion
for new trial, to which defendant excepted, and prayed an appeal
to this court.

*J. E. Whitehead*, for appellant.

*T. C. Humphrey* and *Horton & Brewer*, for appellee.

TOWNSEND, J.   The appellant has filed two assignments of error, as follows:  "(1)   The court erred in not quashing the summons.   (2)   The court erred in finding the issues of fact and law in favor of the appellee under the pleadings and proof, and in holding that appellee was not doing business in the Indian Territory within the intent and meaning of said act of Congress."

Under the first assignment appellant quotes a part of section 4968, Mansf. Dig. (Ind. Ter. St. .1899, § 3173).   Said section is as follows:  "The summons shall be directed to the sheriff of the county, and command him to summon the defendant or defendants named therein to answer the complaint filed by the plaintiff, giving his name, at the time stated therein, under the penalty of the complaint being taken for confessed, or of the defendant being proceeded against for contempt of court on his failure to do so.   The summons shall be dated the day it is issued, and signed by the clerk."   Appellant's contention is that the summons served in this case omitted the following words: "under the penalty of the complaint being taken for confessed," and insists that the omission of said words is not a defect in form, but is a defect in substance; that the same cannot be amended, and therefore the summons is void.   Appellant cites part of a paragraph from the case of Rice, Stix & Co. vs Dale et al., 45 Ark. 36, as follows:  "That the statutory form of writs and process should be strictly observed," but fails to quote the balance of the paragraph, as follows:  "But the court is required to disregard any defect which does not affect the substantial rights of the parties."   Besides, appellant and appellee made an agreement in regard to this case, which, after reciting the summons at length, and also the return on same, is as follows:

"We agree that the summons and the order of delivery was served upon the defendant on the 26th day of May, 1902, by delivering to him a true copy of the annexed which is by this agreement made the original order herein, on said day, and defendant waives all irregularities in the same, and that it is further agreed that the case be continued until next term of this court, January 20, 1903.

"(Signed)     J. H. Ammons, Defendant,
"By J. E. Whitehead, Attorney.
"T. C. Humphrey, Atty. for Plff."

If the omission of the words quoted was anything more than an irregularity of form, we fail to comprehend it. It certainly "does not affect the substantial rights of the parties," and has certainly been cured by appellant's own agreement. The principal function of the summons is to give the party served notice of the suit, and when the party served has entered his general appearance in the case he is bound by the subsequent proceedings. In this case, after appellant's motion to quash had been overruled, he appeared and agreed to a continuance, and subsequently filed his answer. "A continuance by agreement of parties is tantamount to a general appearance." The above language is used in the text at page 633, Enc. Pl. & Pr. (2d vol.). See, also, St. Louis, etc., R. Co. vs Barnes, 35 Ark. 95; Baisley vs Baisley, 113 Mo. 545, 21 S. W. 29, 35 Am. St. Rep. 726. We are of the opinion that this assignment was not well taken.

Under the second assignment appellant contends that the appellee was doing business in the Indian Territory within the meaning of the act of Congress, and that the court erred in holding otherwise, and also erred in finding the issues of fact and law in favor of appellee. The section of the act of Congress (Act Feb. 18, 1901, c. 379, 31 Stat. 795) which appellant claims was

not complied with by appellee before it could do business is as follows: "Sec. 4. That before any foreign corporation shall begin to carry on business in the Indian Territory it shall, by its certificate, under the hand of the president and seal of such company, filed in the office of the clerk of the United States Court of Appeals for the Indian Territory, designate an agent, who shall reside where the United States Court of Appeals for the Indian Territory is held, upon whom service of summons and other process may be made. Such certificate shall also state the principal place of business of such corporation in the Indian Territory. Service upon such agent shall be sufficient to give jurisdiction over such corporation to any of the United States Courts for the Indian Territory. If any such agent shall be removed, resign, die or remove from the Indian Territory, or otherwise become incapable of acting as such agent, it shall be the duty of such corporation to appoint immediately another agent in his place, as hereinbefore provided." This case was tried by the court upon an agreed statement of facts, as follows: "It is agreed that the following statement of facts be submitted to the court sitting as a jury as the evidence in the above-entitled cause, to wit: That on January 9, 1902, the defendant, J. H. Ammons, wrote to the plaintiff, asking it to send him a catalogue for bar fixtures, pool and billiard tables, saying that he was going to open a new house. That the plaintiff mailed the defendant a catalogue on 11th of January, and that on January 14, 1902, defendant acknowledged receiving catalogue by letter to plaintiff, and in same letter asked plaintiff if it could furnish a 14 ft. 20th Century outfit, and asked for lowest cash figures on 14 feet Model outfit; also pool and billiard tables. That plaintiff wrote a reply, giving prices of different outfits, which was received by defendant, and defendant then ordered part of the goods sued for in this suit, and sent two notes and a cash payment, asking that the goods be shipped to Hartshorne, and in the same letter ordered

more of the goods by way of a postscript, and enclosed $10 cash and promised to send time notes for balance. In reply to this plaintiff mailed defendant time order blank to be signed by defendant, making order for the goods, and stating the price, and also returned to defendant the notes sent by him. And on February 14, 1902, defendant wrote plaintiff a letter and inclosed the time order signed by him. This time order stipulated that defendant agreed to execute notes and a mortgage to secure the balance of the purchase price, and that title to the property should remain in plaintiff until said mortgage upon said property was given, and by correspondence it was agreed that the notes be made payable at the First National Bank in South McAlester. That on the 5th day of March, 1902, defendant wrote plaintiff and asked prices on Southern pool table and N. Y. combination billiard and pool table. On March 7th plaintiff answered by mail, giving prices. On March 10, 1902, defendant ordered from plaintiff Southern pool table, with complete outfit, $150, Delaware combination billiard and pool table, with ivory balls, $225, and signed up the time order for these goods, and asked that the plaintiff ship goods to Hartshorne. That all the property sued for in this action was ordered by defendant on the time order blanks mailed defendant by the plaintiff. And that the plaintiff made out two mortgages, one dated on the 26th of February and the other March 31, 1902, upon printed mortgages in blank used by plaintiff, covering the property sold defendant, and notes for balance of purchase money, and mailed the same in Chicago, Illinois, the general office of plaintiff, to the First National Bank of South McAlester, to be signed and executed by the defendant. That plaintiff, under the terms of the order of defendant, was to ship goods and send bill of lading (B. L.) to First National Bank, with said notes and mortgages, the bank to deliver the B. L. when notes and mortgages were executed by defendant. The defendant signed both notes and mortgages and acknowledged execution of mortgages before E. T. Bradley, a

notary public, at said bank, and left same with Mr. Bradley, cashier of First National Bank, who delivered to the defendant the B. L. for goods. That when the notes became due the defendant failed and refused to pay them, or any part thereof, and demand was made to defendant for the possession of the property covered by mortgage, and defendant refused to surrender property, and this suit was brought for the possession of the property by plaintiff as mortgagee, the mortgage giving the plaintiff right of possession upon default of payment of any note. Defendant gave retaining bond, and kept the property." The appellant contends that the sale in this case took place in the Indian Territory, and contends that the bill of lading, having been sent to the bank in South McAlester to be delivered to appellant upon his execution of the notes and mortgages, proves this contention, and cites numerous authorities to establish the proposition that the delivery of the bill of lading is the delivery of the goods. The appellee, upon the other hand, contends that the goods it sold to appellant were sold to him upon mail order at Chicago; and the fact that the goods were shipped, and the bill of lading sent to the First National Bank at South McAlester, for delivery to appellant when the mortgage in question should be completed and sent to appellee, does not change the rule that the goods were actually sold where appellee received the order, accepted it, and prepared and shipped the goods, and in support of this contention cites numerous authorities. So far as the proof in this case extends, it does not appear that the appellee did any other business in the Indian Territory than the business with the appellant, and the important question, it occurs to us, is, was this such a violation of the act of Congress as would relieve the appellant from paying for the goods he purchased? The language of the act of Congress is that, before any foreign corporation shall begin to "carry on business" in the Indian Territory, they shall make and file a certificate designating an agent upon whom service of summons and other process may be made.

'Such certificate shall also state the principal place of business of such corporation in the Indian Territory." The certificate was never filed. The evidence contained in the agreed statement of facts above set out does not show that appellee had any "principal place of business" in the Indian Territory. Was the transaction with the appellant the carrying on of business as contemplated by the act? The appellant contends that it was, and says: "The act forbids the doing of a single act of business by a foreign corporation within the exercise of a corporate function as well as the engaging in or carrying on business generally. If the line should not be drawn at a single act, then where draw it? Should it be drawn at five, twenty-five, five hundred, or where?" Appellant cites in support of his contention the case of Chattanooga National Building & Loan Association vs Denson, 189 U. S. 408, 23 Sup. Ct. 630, 47 L. Ed. 870, which he claims is a case directly in point, which case cites several Alabama cases in support of its construction. It appears that the Supreme Court in this case was deciding a cause arising under the laws of the state of Alabama, and declared "that the almost unbroken line of decision in Alabama, where the suit arose, was that any act of business or the exercise of any corporate function by such corporation was a violation of the Alabama statute." But appellee contends that the Supreme Court in this case was simply following the decisions of the court of last resort in Alabama in the construction of an Alabama statute, but that, where the Supreme Court is not bound by the construction of a statute by the court of last resort of the state where the statute is in force, a different rule obtains. In the state of Colorado, where there had been no settled construction of the statute by the Supreme Court of Colorado, the Supreme Court of the United States, in the case of Cooper Mfg. Co. vs Ferguson, 113 U. S. 727, 5 Sup. Ct. 739, 28 L. Ed. 1137, in discussing the identical question, say: "Reasonably construed, the Constitution and statute of Colorado forbid, not the doing of a single act of business in the state, but the carrying

on of business by a foreign corporation without the filing the certificate and appointment of an agent as required by the statute.    The Constitution requires the foreign corporation to have one or more known places of business in the state before doing any business therein.    This implies a purpose, at least, to do more than one act of business, for a corporation that has done but a single act of business, and purposes to do no more, cannot have one or more known places of business in the state.    To have known places of business, it must be carrying on business. The statute to carry the provision of the Constitution into effect makes this plain, for the certificate it requires to be filed by a foreign corporation must designate the principal place in the state where the business of the corporation is to be carried on. The meaning of the phrase 'to carry on,' when applied to business, is well settled.    In Worcester's Dictionary the definition is:   'To prosecute, to help forward, to continue; as to carry on business.' The definition given to the same phrase in Webster's Dictionary is:   'To continue, as to carry on a design; to manage or prosecute, as to carry on husbandry or trade.' "    It would seem, therefore, that to require such a certificate as a prerequisite to the doing of a single act of business, when there was no purpose to do any other business or have a place of business in the state, would be unreasonable and incongruous.    Cooper Mfg. Co. vs Ferguson, 113 U. S. 727, 737, 5 Sup. Ct. 739, 28 L. Ed. 1137; Scruggs vs Scottish Mort. Co., 54 Ark. 573, 16 S. W. 563; Florsheim, etc., Co. vs Lester, 60 Ark. 120, 29 S. W. 34, 27 L. R. A. 505, 46 Am. St. Rep. 162; Am. & Eng. Enc. Law (2d Ed.) vol. 13, p. 869.    In the Am. & Eng. Enc. Law (2d Ed.) vol. 13, page 869, supra, under the heading "Single Acts of Business," the text reads as follows: "So, also, the doing of a single act of business in the domestic state by a foreign corporation does not constitute the doing or carrying on of business within the meaning of the statutory and constitutional provisions."    This text is based upon the following citations of authorities: Cooper Mfg. Co. vs Ferguson, 113

U. S. 727, 5 Sup. Ct. 739, 28 L. Ed. 1137; St. Louis Wire Mill Co. vs Consol. Barb Wire Co. (C. C.) 32 Fed. 802; Gilchrist vs Helena R. Co. (C. C.) 47 Fed. 593; Babbitt vs Field (Ariz.) 52 Pac. 775; Gates Iron Works vs Cohen, 7 Colo. App. 341, 43 Pac. 667, and other Colorado cases; Galveston City R. Co. vs Hook, 40 Ill. App. 547; Pierce Steam Heating Co. vs Seigel Gas Fix. Co., 60 Mo. App. 148; Potter vs The Bank of Ithaca, 5 Hill (N. Y.) 490, and other New York cases therein cited. In Florsheim, etc., Co. vs Lester, 60 Ark. 123, 29 S. W. 35, 27 L. R. A. 505, 46 Am. St. Rep. 162, the court says: "We believe the better view and the weight of authority to be that the doing of a single act of business or the making of an isolated contract is not doing or carrying on business within the meaning of these state restrictive laws." While there is some conflict of authority, we believe, with the Supreme Court of Arkansas, that the better view and the weight of authority is that a single act of business is not doing or carrying on business within the meaning of the act of Congress. We are therefore of the opinion that the court below decided this case correctly, and the same should be, and is hereby, affirmed.

RAYMOND, C. J., and GILL, J., concur.