————o————

OSCAR P. BALDWIN, Defendant in Error, *vs.* THE CHOUTEAU INSURANCE CO. OF ST. LOUIS, Plaintiff in Error,

| 56 151 |
| 31a 69 |
| 56 151 |
| 41a 545 |
| 56 151 |
| 64a 589 |

1. *Insurance—Acceptance of premium—Delivery of policy—Notice of fire—Payment of premium—Waiver—Instructions.*—When an Insurance Company accepts the premium and delivers the policy, the contract to insure is complete and executed; and it relates back to the day when the application was filed and the policy made out and signed; and the insured is under no obligation to notify the company that the building insured has been destroyed by fire in the meantime. And the premium need not be paid in order to bind the contract, where the company waives its right to immediate payment and extends credit to the assured. The obligation of the company remains notwithstanding, and the question of such waiver is one of fact to be submitted to the jury by appropriate instructions.

*Error to St. Louis Circuit Court.*

*Orrick & Emmons,* for Plaintiff in Error.

Plaintiff being unable to pay the premium refused to accept the policy till after the fire, when he obtained it by concealing that fact. The contract of Insurance could not consist with such refusal. In Keim vs. Home Mut. Fire Ins. Co. (42 Mo., 38,) no demand was ever made upon Waterman for the premium; and there was no refusal on his part.

*W. F. Causey,* for Defendant in Error.

I. When the company on the same day proceeded to make out and sign the policy, it ratified the application and its con-

sent was complete. The acceptance of a proposal to insure for the premium offered, is the completion of the negotiation. (Ang. Ins., 341, *et seq* ; Keim vs. Home Mut. Fire & Mar. Ins. Co., 42 Mo., 38 ; Taylor vs. Merchants' Ins. Co., 9 How., 390 ; Com. Ins. Co. vs. U. M. Ins. Co., 19 How., 318; Hallock vs. Com. Ins. Co., 2 Dutch [N. J.] 268 ; 3 Dutch, 645.)

II. Where the company accepted the premium and delivered the policy, the agreement to insure was complete and executed, and related back to the day when the application was filed and the policy made out and signed, and the insured was under no legal obligation to notify the company that the building insured had been burned in the meantime. (42 Mo., 38, and the authorities there cited.)

The moment the policy is signed it becomes the property of the assured without manual delivery to him. The company hold it as the bailee of the assured, and he can maintain trover against them for its recovery. (Kohne vs. Ins. Co., of North America, 1 Wash., C. C. R., 93 ; Pim vs. Reed, 6 Mann. & Gr., also the cases above cited.)

III. Whenever it is a condition of a policy that the insurance shall not commence before the premium is actually paid, this is waived by issuing the policy, or in other words, signing it before payment. (Ky. M. L. Ins. Co. vs. Jenks, 5 Porter [Ind.], 96 ; Goit vs. Nat. Protection Ins. Co., 25 Barb., 189 ; Ang. Ins., 343; 19 How., 318; 2 Dutcher, 268 ; Thompson vs. St. L. Mut. Life Ins. Co., 52 Mo., 469.)

WAGNER, Judge, delivered the opinion of the court.

In Keim, *et al.* vs. Home Mutual Fire and Marine Ins. Company (42 Mo., 38), we decided that where an application for insurance was filed, and on the same day the company proceeded to make out and sign the policy, it ratified the application and its consent was complete; that the acceptance of the proposal to insure for the premium offered was the completion of the negotiation ; and that when the company accepted the premium and delivered the policy, the agreement to insure was complete and executed, and related back to the day when the application was filed and the policy made out and signed,

and that the building insured having been burned in the meantime, the plaintiff was under no legal or moral obligation to inform the company of that fact.

It appeared in that case, that an application to the secretary of the insurance company was made on the 9th of February, 1860, to have the property insured for the sum of $3,000. The application was accepted by the secretary, and the terms agreed upon, and the policy was to take effect from noon of that day; the policy was made out immediately thereafter and signed, and both the application and policy were permitted to remain in the hands of the company. On the 14th of March, 1860, the building insured was consumed by fire, and after intelligence of that fact was communicated to the insured, he went to the office of the company, paid the premium, and obtained the policy. He did not disclose the fact of the building being burned up when he got the policy, and the insurance company was ignorant of that fact when the same was delivered. As soon as knowledge of the burning came to the possession of the company it refused to pay the loss, but it was held that on the acceptance of the terms proposed a mutual assent took place; the minds of both parties met on the subject in the manner contemplated at the time of entering into the negotiation, and the contract became binding on each and related back to the day the application was filed and the policy made out.

In May on Insurance, § 44, it is said, that the agreement for insurance is complete when the terms thereof have been agreed upon between the parties, and the reciprocal rights and obligations of the insurer and the insured, date from that moment, without reference to the execution and delivery of the policy, unless these two elements are embraced within the terms agreed upon. The contract imparts an obligation on the part of the insurer to execute and deliver a policy to the insured; and on the completion of the negotiations the policy executed in accordance therewith and dated on the day of the completion, though not actually delivered till afterwards, or at all, will take effect from its date unless some other terms are expressly agreed upon. Many cases are cited by the author

to support this doctrine. (See Lightbody vs. North Missouri Insurance Company, 23 Wend., 18; Hallock vs. Com. Ins. Co., 2 Dutch, 268; S. C. affirmed, 3 Dutch, 645; Flint vs. Ohio Ins. Co., 8 Ohio, 501; Xenos vs. Wickham, 2 Law Rep. [H. L.], 296; American Home Ins. Co. vs. Patterson, 28 Ind., 17.)

The agreement may exist and be complete prior to drawing up and delivering the policy, and courts will interpose and furnish relief when the negotiations have reached such a point that nothing remains to be done by either party but to execute what has been agreed upon. Thus in Kohne vs. Ins. Co. of North America (1 Wash., C. C., 93) the plaintiff's agent applied for insurance and agreed upon all the terms, but left the office before the policy was filled out. This however, was filled out within a few hours and notice thereof given by the company, accompanied, however, by notice that the company had received information that a loss had happened. On calling for the policy and tendering the premium, the agent refused on the ground that a loss had happened before the delivery and the contract was not complete. But the court held otherwise, as everything had been agreed on, and nothing remained to be done but to carry out the terms already agreed on, and the plaintiff had a verdict.

In the case of the Commercial Mutual Marine Insurance Company vs. Union Mutual Insurance Company (19 How., 318), an application for re-insurance was made on Saturday upon certain terms, which were declined and other terms demanded, and on Monday these last mentioned terms were accepted by the applicant, and assented to by the president of the company, but the policy was not made out because Monday was a holiday, and on that night before anything more was done by the company; the ship which was the subject matter of the insurance was totally destroyed by fire. On the next day after the fire, the insured tendered their note for the agreed premium and demanded the policy of re-insurance. The Company declined to make the policy. The Supreme Court of the United States unanimously held, that when the parties agreed upon the terms the contract was

executed and complete, and that the plaintiffs were entitled to recover.

So in the case of Whittaker vs. the Farmers' Union Insurance Company, (29 Barb., 312). There, the plaintiff on the 28th of March, applied for insurance to the agent of the company who gave him a receipt acknowledging the payment of the premium and stating that the policy was to take effect on that day at noon. The premium was not actually paid at the time, it being agreed that the plaintiff might send it to the agent at his convenience. The property insured was destroyed by fire on the 7th of April. The premium was sent to the agent immediately after the fire and he accepted the money without having heard of the loss, and sent the application, together with the premium to the company. The company thereupon, without any knowledge of the fire, forwarded a policy for the plaintiff to the agent, but subsequently on being informed of the loss, instructed him not to deliver the same. It was held that when the Company accepted the premium and forwarded the policy to its agent for delivery, the agreement to insure was complete and ratified and related back to the 28th of March, the day on which the application was made, and that the plaintiff was entitled to a specific performance thereof, by the delivery of the policy to him and the payment of the amount of the loss, and that he was under no obligation, either moral or legal, to inform the Company of the destruction of the insured building.

In the present case the facts are, that at the solicitation of the defendant's agent, the plaintiff made his application for insurance on the 10th day of January, 1871. The application was duly accepted and the terms agreed on, and the policy was made out and signed the same day, being in force from noon of that day. The policy remained in the hands of the Company until the 27th of March, next ensuing. On the 26th of March the property was destroyed by fire, and on the following day the plaintiff went to the office of the Company, paid the premium, and obtained the policy. He did not disclose the fact of the property being burned up when he received the policy, and the defendant was ignorant of that fact

when the same was delivered. There was evidence tending to prove that when the application was made for insurance the insured told the agent that he could not pay the premium at that time, and that the agent informed him that, that would make no difference, that he would take his note for one, two or six months.

Plaintiff declined giving his note, but said he would have the money in a short time, when he would pay the premium in cash. When the application was returned to the office the policy was immediately made out and entered on the Company's books, as an insurance made and executed. It was still continuing in this condition when the plaintiff called, got the policy, and paid the premium. Whether the Company waived the right to have immediate payment, and extended credit, was a question of fact which should have been submitted to the jury, and the court erred in refusing the instructions in this respect. But the main point relied on and strongly pressed upon our attention, is the leading and controlling one, as to whether there was an actual contract of insurance. On the trial at Special Term the plaintiff asked two instructions on this subject, both of which were refused by the court. In one the court was requested to instruct the jury that, if they believed from the evidence that the plaintiff applied for the insurance on his property to the defendants on the 10th day of January, 1871, and on the same day the defendants proceeded to make out and sign the policy for said insurance, then the said defendants ratified the application, and their consent was complete ; and further, if they find that the plaintiff paid the premium to the defendants on the 27th day of March, 1871, a day after the fire, and that the defendants then delivered the policy, and although the fact of the fire was not known to the defendants, the plaintiff was under no obligation to inform the defendants at the time he paid the premium, that the fire had occurred, and the jury should find for the plaintiff. The other instruction was a request to declare the law to be, that when the defendants accepted the premium and delivered the policy, the agreement to insure was

complete and executed, and related back to the day when the application was filed and the policy made out and signed, altho' building insured had been burned and destroyed by fire in the meantime.

The court, after the refusal of all the plaintiff's instructions, gave a declaration at the instance of the defendants, which utterly precluded the plaintiff from recovering. Plaintiff thereupon took a non-suit, and, failing to get the same set aside, he appealed to the General Term, where the judgment at Special Term was reversed and the cause remanded for a new trial. According to the principles established in the authorities above adverted to, the plaintiff's instructions should have been given. There can be no doubt but that the policy would have been delivered to the plaintiff and been regarded by the defendants as binding from noon on the 10th day of January, 1871, if the house had not been burned on the 26th day of March. And if it had been delivered it would have been valid from the time it was made to take effect. If it would have been valid, if no fire took place, I cannot see how the fact that a fire happened, invalidated it. There could be no justice in allowing the Company to construe it into a contract when it was to its advantage, and then repudiate it when it was disadvantageous. When the defendant accepted the premium and delivered the policy, the agreement to insure was complete and ratified as of the 10th day of January, 1871. The plaintiff had the right to rely on his agreement, and was not bound to voluntarily inform the defendants of the fire.

Wherefore, I think the judgment of the General Term should be affirmed and the case remanded for a new trial. The other judges concurring, except Judge Sherwood who is absent.