Taylor v. Short.

TAYLOR *et al.*, *Plaintiffs in Error*, v. SHORT.

DIVISION ONE.

1. **Contract**: FRAUD : RESCISSION. The right to rescind a contract on the ground of fraud must be exercised on the discovery of the fraud.

2. ——— : ——— : ——— : WAIVER. Where after such discovery the complainant treats the transaction as binding, he will waive the right to rescind.

3. ——— : ——— : ——— : ———. Nor will the subsequent discovery of a new incident of the fraud revive the right to rescind.

*Error to Pettis Circuit Court.* — HON. RICHARD FIELD, Judge.

AFFIRMED.

*Samuel Boyd* for plaintiffs in error.

(1) Defendant, having undertaken, as the agent of plaintiffs, for the exchange of their farm, could not exchange with himself for his own property, or for property he had contracted to purchase, without first fully advising plaintiffs of such facts. Having contracted with himself and having taken the title to plaintiffs' land to himself, is itself sufficient to entitle plaintiffs to a rescission. And when taken in connection with the fact that defendant wilfully concealed the fact that he was to be the purchaser, and concealed the name of the person to whom he pretended that he had conveyed the land, and that all his concealments were made unquestionably to defraud his principals, the plaintiffs, is sufficient to entitle the plaintiffs to a rescission of both contracts, or to damages sustained by reason of the fraud. *Grumley v. Webb*, 44 Mo. 451; *McNew v. Booth*, 42 Mo. 189; *Rea v. Copelin*, 47 Mo. 83; *Murdock v. Milner*, 84 Mo. 183; Bigelow's Law of Fraud, 296–7; Mecham on Agency, secs. 461–2, and note. (2) The exchange of the Fannin county land for the Hood county land cannot in this case operate as a waiver of the fraud perpetrated by defendant in the exchange of the Pettis county land for the Fannin county land. The material facts, constituting such fraud, were unknown to plaintiffs at the time of the exchange for the Hood county land. A mere rumor to the effect that defendant had bought the Fannin county land at $2, and put it to plaintiffs at $4 per acre, and the knowledge that no deed to defendant for the Fannin county land was on record in that county, and the fact that no deed from defendant conveying the Pettis county land was to be found of record, were not sufficient to apprise plaintiffs of the fraud or to justify an action for rescission, and will not estop plaintiffs from rescinding now. *Krause v. Thompson*, 30 Minn. 64; *Billings v. Morrow*, 7 Cal. 171; s. c., 68

Am. Dec. 235; *Davidson v. Dallas*, 8 Cal. 244; *Mining Co. v. Bank*, 2 Col. 565; Mecham on Agency, secs. 129, 454, 455, 456–7, 461; *People v. Township Board*, 11 Mich. 222; *Sill v. Sill*, 31 Kan. 248. (3) The plea of acquiescence, election or estoppel set up by defendant Short cannot be sustained in this case, because based upon the exchange of the half interest in the Fannin county land for the Hood county land, which transaction was equally as fraudulent as the first pretended sale.

*Jackson & Montgomery* for defendant in error.

(1) If it were true that plaintiffs had been deceived as claimed by them, still they were not entitled to the relief sought, because they did not promptly disaffirm the exchange of property after the discovery of the alleged fraud; and because after such time they treated the transaction as subsisting and binding, and dealt with the property in Texas as their own, and that in Missouri as the respondent's. They exercised their right of election by affirming what was at most but a voidable transaction, and that election once made was final and could not be retracted. 2 Pomeroy's Eq., sec. 897; 1 Story's Eq., sec. 203; *Lockwood v. Filts*, 7 S. Rep. (Ala.) 467; *Grymes v. Sanders*, 93 U. S. 55; *Bobb v. Woodward*, 50 Mo. 95; *Melton v. Smith*, 65 Mo. 315; *Roemer v. Conlau*, 52 N. J. L. 53; s. c., 18 Atl. Rep. 858; *Stutz v. Coal & Coke Co.*, 18 Atl. Rep. (Penn.) 875; *Disbrow v. Secor*, 18 Atl. Rep. (Conn.) 891; *Wheeler v. Dunn*, 22 Pac. Rep. (Colo.) 827; *Strong v. Strong*, 102 N. Y. 69; *Shoe Co. v. Block*, 12 S. W. Rep. (Ark.) 1073; *Lapp v. Ryan*, 23 Mo. App. 436. (3) The evidence shows that before making the exchange plaintiffs personally examined the land in Fannin county, Texas; knew that defendant held the title to the same, and that he was to take the title to the Missouri land from plaintiffs. The evidence further shows that plaintiffs did not rely upon defendant's statements; that those

statements were not calculated to mislead plaintiffs and were not material to the transaction, and that plaintiffs were not injured thereby. See authorities above cited, and 2 Pomeroy's Eq., secs. 890–898. (3) The plaintiffs, having elected to affirm the transaction through which they conveyed the Pettis county farm and acquired the half interest in the Fannin county land, cannot now revoke that election nor rescind that transaction because of alleged frauds concerning the exchange of the Fannin county land for land in Hood county, Texas. See authorities cited under first point.

SHERWOOD, P. J.—This proceeding is one in equity begun in August, 1887, for the purpose of rescinding a transaction, whereby plaintiffs, who are husband and wife, exchanged a farm in Pettis county, Missouri, for a tract of land in Fannin county, Texas, and to vest in plaintiffs the title of the Pettis county farm. The exchange of lands had been effected in November, 1884, and resulted in the legal title to the Pettis county farm becoming vested in the defendant, whom the petition charges with having effected the exchange and obtained the title to the Pettis county farm by means of fraud.

The circuit court, after hearing all the evidence, held the same insufficient as a basis for equitable relief, and dismissed the petition; and plaintiffs have brought the cause up on error. Briefly told the facts are that in November, 1884, Taylor, the husband, at the instance of Short, the defendant, went down to Texas and examined the land in company with Short and being satisfied told Short, already there, to go on and close the trade; and so it was that a contract was made, whereby Short was to pay Taylor $2,500 to relieve the Pettis county farm of an incumbrance, that farm being valued in the trade at $5,000, and so doing was to have a half interest in the Fannin county tract, and in order to consummate this matter the deed to the Pettis county farm was made to the defendant, he representing this to be necessary. Taylor finally obtained a deed to half of the

Fannin county land, and afterwards exchanged it for land in Hood county, Texas. Owing to some misdescription of the Pettis county farm, a new deed was made to the defendant, but this was in 1885, after the plaintiff's husband had been informed that the defendant had put in the Fannin county land to him at $4 per acre, when it only stood him in hand at $2 per acre. The defendant also rented the Pettis county farm to Taylor who thereafter occupied it as the defendant's tenant, paying rent as such. Short took the title to the Fannin county land in himself, buying, it seems, from one Simston, and then executed a deed to plaintiffs for one-half, as agreed, which deed was never recorded. The Fannin county tract, thirteen hundred and sixteen acres was valued at $3.50 per acre or $4,600, and the Pettis county farm, two hundred and eight acres, at $5,000, and Taylor expected that the respective pieces of property would be put in at more than their cash values.

When Taylor went down and looked at the Fannin county land, Short told him he must have the deed to the Pettis county farm made to him, and Taylor thought this looked suspicious, but, nevertheless plaintiffs made the deed as requested to Short, November 7, 1884. At first Short stated that he had told the owner of the Texas land that the Missouri land belonged to him, Short, but afterwards told Taylor that he had traded for the land himself. He asked Short how he had got into it, and Short said that was not a matter for Taylor to investigate, and he made no further inquiry; it didn't make any difference to him. He knew that Short had represented that he had become the owner of the Pettis county land; told Taylor he had bought it, and Taylor wrote to him to fix it any way he pleased; it didn't make any difference to him, Taylor; it was immaterial, because whichever way the deeds were made the plaintiff got what had been agreed upon, viz., a half interest in the Fannin county land for their equity in

the Pettis county farm. The day they went to see the land and several times afterwards, Taylor asked Short for the name of the man from whom he was getting the Fannin county land, and Short said he had forgotten the name. Taylor thought that was very suspicious.

After having completed the transaction as above shown, Taylor became the tenant of Short, renting the Pettis county farm at $450 for the first year and $350 for the next year. In the month of August or September, 1885, the plaintiffs were informed, through a friend, a Mr. Calfus, who had been in Dallas, Texas, where Short lived, that Short had bought the Fannin county land at $2 per acre, and put it in to plaintiffs at $4 per acre. From Calfus's information he doubted the truth of Short's previous statements. This information from Calfus "bore a good deal on his mind." That information led him to suspect that Short had not exchanged Taylor's farm for the Fannin county land, but had bought the latter himself, at a small price, and put it in to the plaintiffs at $4 per acre, and without actually exchanging with the party who owned the Fannin county land. At this time the $2,500 cash to be paid by Short to settle incumbrances, etc., had not been fully adjusted and paid, and after receiving the above information from Calfus plaintiffs made a corrected deed to Short, October 3, 1885, and settled the balance of the $2,500 by receiving, on October 5, 1885, $600 from Short and giving him a receipt for same as "payment of balance due for exchange of land."

On October 9, 1885, Taylor wrote a letter to the county clerk of Fannin county, to ascertain from whom Short got the land, with his address, what price was put on the land when Short bought it, and its cash value. Shortly afterwards Taylor received a letter, dated October 26, 1885, from Wm. A. Bramlette, an attorney of Bonham, Fannin county, Texas, informing him that there was no deed on record to Short; that the title stood in A. R. Livingston, and that the

land was not worth over $2 per acre. On October 30, 1885, Taylor wrote to Bramlette, stating that he believed Short had swindled them, and that all he needed was the proof of the fraud, which he wanted to employ Bramlette to look up for him.

Afterwards he received a letter, dated November 14, 1885, from Bramlette, advising him that he could have the trade canceled and that he should proceed at once. On November 22, 1885, Taylor again wrote to Bramlette, offering to employ him as his attorney to work up his case against Short, and stating : "I believe it would be an easy job to find out just how he made the trade, and if the matter is as I think it is, and he has laid himself criminally liable, which I believe he has, he would be glad to pay me for the other half of my place." Taylor also wrote to Stone and Livingston, and not receiving any replies, he concluded there was something wrong. From the circumstances above mentioned Taylor felt they had not been dealt with fairly.

In the fall of 1885 they adjusted the rent of the Pettis county farm for that year, and Taylor gave Short his note for it, which he paid Short in January, 1886, or later, and made a new lease of the farm for the next year ; and all that was done after plaintiffs had received the information from Calfus, and had had the correspondence with Bramlette, and after Short had told them that he was really the owner of the Pettis county farm.

Taylor endeavored to borrow money on the Fannin county land, and in March, 1886, sent a note and deed of trust on that land to Short, for the purpose of having Short effect a loan.

During the winter of 1885-6, the plaintiffs were negotiating with one Guyton for a trade of the Fannin county land for a tract of land in Hood county, which was consummated in April, 1886. While the plaintiffs were negotiating for the trade with Guyton, and when they closed it, they had the above information concerning the

transactions about the exchange or conveyance of the Pettis county farm and the Fannin county land, and had made up their minds that they were at their "journey's end," and would make the best out of it that they could. If the Hood county land had been as represented they would have been satisfied, and would not have said a word.

In another part of his testimony Taylor said that he had expected Short to furnish him the money to buy sheep and to assist him in getting to Texas, which Short failed to do, and that created a suspicion, and that the real ground of complaint was that Short had not furnished this money; if he had done that Taylor would have gone to Texas, and everything would have been all right. From the time plaintiffs conveyed the Pettis county farm to Short, up to about the time this suit was brought, Taylor was constantly endeavoring to sell the Pettis county farm for Short, as the latter's property, and was never able to get an offer of more than $4,000 for it. In explanation of his endeavors to sell the farm for Short, after he had learned what he had about the Fannin county land, Taylor said : "I thought if I had been swindled out of it that I could recover damages."

During 1886, Taylor and Short had some negotiations about a trade of the former's interest in the Fannin county land to Short for the Pettis county farm, and Taylor was also urging Short to make certain improvements on the Pettis county farm. In August and September, 1886, Taylor endeavored to secure from Short a lease of the Pettis county farm for another year, and in October, 1886, declined to pay the rent asked and promised to vacate on the first of the next March ; and in March, 1887, plaintiff did surrender possession and turned the place over to their son who had rented the farm from Short.

Plaintiffs claim they were deceived by Short concerning the Hood county land and the terms of the exchange of it for the Fannin county land. Concerning

that matter Taylor testified that he knew Short had never seen the Hood county land, and did not claim to have any personal knowledge of it, and that all that Short said about it was second hand, and was only a statement of what Short had been told about it. Didn't know that he really thought when they traded for it that that land was worth the price put on it.

On March 30, 1886, Taylor wrote to Short as follows: "I have concluded, upon the recommendation that Mr. Guyton makes to you of the land in Hood county, to trade with him, and I request you to go ahead and make the trade, examine title, exchange deeds," etc., etc.

The foregoing *resumé* of the salient facts this record discloses emphasizes the correctness of the action of the lower court in dismissing the petition of plaintiffs, because lack of evidence to support its allegations, either because that evidence showed no fraud, or that if it did plaintiffs with knowledge or means of knowledge of the prominent attributes of that fraud waived it and condoned it by dealing with the property received in exchange, and by failing also promptly to *exert* a right of rescission because of said perpetrated fraud. And it is not at all requisite that the full features of the given fraud should be known to the party complaining thereof in order to evoke the right of rescission. Whenever that right arises, by reason of the discovery of the fraud, then the right of election springs up also ; election as to whether the party deceived will rescind or will treat the transaction as a contract.

Whenever, upon discovery, he does treat the matter in the latter way, either by waiving the fraud in express terms or impliedly by continuing to deal with the property or proceeds emanating from that fraud, then the right to rescind is gone. Negotiations or dealings with the fraud-feasor, respecting the subject-matter of the fraud after discovery, are fatal to the right of repudiation. "The right to rescind a contract must be exercised so soon as any one of the events which give rise to

the right happens, or is known to the person entitled to it. Thus, in the case of a transaction grounded on fraud, the party deceived must, on the discovery of the fraud, elect to rescind or to treat the transaction as a contract. * * * Nor will the right to rescind revive merely because of the subsequent discovery of some incident of the fraud, or other ground on which the right arises, which was not known at the time of the waiver ; so where in a transaction based on fraud the purchaser did not immediately on the discovery of the fraud repudiate the contract, but on the discovery of a further circumstance of fraud sought to do so, he was held incapable then of rescinding the contract. 'To entitle him to do so,' said Mr. Justice PATTERSON in that case, 'he should, at the time of discovering the fraud, have elected to repudiate the whole transaction. Instead of doing so, he deals with that for which he now says that he never legally contracted. Long after this, as he alleges, he discovers a new incident in the fraud. This can only be considered as strengthening the evidence of the original fraud, and it cannot revive the right of repudiation which has been once waived.' " Fry on Spec. Perf. of Cont. [ 2 Ed,] secs. 703, 704.

Tested by the rules here laid down, it is beyond question that Taylor should have acted promptly upon receiving the information he did respecting the price of the Fannin county land, as distinguished from its value, etc. This is upon the assumption that a fraud was committed and was discovered at the time stated, and before the other negotiations and dealings aforesaid between the parties litigant occurred.

It is unnecessary to pursue the subject further ; the judgment is affirmed. All concur.