## SOL S. LANDON, Appellant, v. WILLIAM L. TUCKER, et al., Respondents.

**Kansas City Court of Appeals, February 17, 1908.**

1. **SALES: Rescission: Diligence.** One coming into equity to rescind a contract must be able to show as a primary condition that he has been diligent and prompt in disavowing the obligation into which he has been fraudulently led. He cannot undertake to dispose of his purchase to others, and then after failure to entrap them as he claims to have been entrapped, seek relief in equity. Evidence reviewed and held sufficient to warrant the rescission of contract of sale of a certain patented medical formula.

2. ———: ———: ———: **Amendment.** *Held*, an amendment after trial, if permissible, could not change the result.

Appeal from Jackson Circuit Court.—*Hon. Edward P. Gates,* Judge.

AFFIRMED.

*Nearing & Townsend* for appellant.

(1) The finding and judgment of the court is contrary to the evidence in that the evidence showed con-

clusively that there was no demand for the irritant.
That the irritant in question, was harmful in its na-
ture, and that it would burn or harm the patient upon
its application through the apparatus aforesaid.    That
the territory embraced in the contracts had been can-
vassed, and that respondents did not comply with their
contract by disclosing to appellant the correct formula
from which the irritant was prepared.    Brewing As-
sociation v. McEnroe, 80 Mo. App. 431; Bridewell Com-
pany v. Keyes, 99 Mo. App. 463; Cummings v. Leedy,
114 Mo. 478; Hough v. Richardson, 3 Story 659; Reese
v. Wyman, 9 Ga. 439; Rhea v. Yoder, 2 Ky. 87; Smith
v. Richards, 13 Pet. 26; 2 Pomeroy, Eq. Jurisprudence,
p. 1584; Naim v. Everett, 51 Kan. 355; Forster v. Wil-
shaen, 35 N. Y. Sup. 1083.

*Bowersock & Hall* for respondent.

The appellate court will, in an equity case, de-
fer largely to the finding of the trial court.    Loan &
Trust Co. v. Browne, 177 Mo. 412; Powell v. Canady,
95 Mo. App. 713; Kittredge v. Loan & Building Assn.,
103 Mo. App. 361.    (2)    The evidence clearly supports
the findings of the trial court.

ELLISON, J.—This action was begun by bill in
equity for rescission of two like contracts for the sale
of a right, one to the State of Missouri, and one to
Kansas, of a patented formula and apparatus known
as a counter irritant for the relief of neuralgia, head-
ache and other pains.    Three thousand dollars was paid
by plaintiff to the defendant bank as consideration for
the purchase and that sum was to be held by the bank
until defendant Tucker, the patentee, procured    the
proper reassignment from the defendant Robens, to
whom assignments had been made.    The bill included a
prayer for a return of that money to plaintiff.    One

130 App.—45

of the contracts was dated April 25th, and the other April 30, 1904. The judgment was for the defendants.

The grounds alleged for equitable relief were representations made by Tucker, as follows:

"That the application of such irritant provided by the formula aforesaid had proved very successful in the territory in which it had been introduced and that there was a large demand for the same wherever it had been used and its effects become known. That the irritant was harmless in its nature and that upon its application, through the apparatus aforesaid it would not burn or harm the patient, but afford speedy relief. That the States of Kansas and Missouri had never been canvassed for the sale of the same, and that said formula and the apparatus for the application of the same had never been on sale within said States and that such territory was entirely free and open for the introduction and sale of the same."

These allegations are alleged to have been false in the following particulars: "That there was no demand of any nature whatsoever for the irritant produced by said formula; that in the application of the same he (the plaintiff) found it harmful to the patients, in that it produced severe pain and burns; that it did not produce the results of relieving pain as represented by said parties but was injurious to the parties and the use of the same could not be recommended; that the territory of the States of Missouri and Kansas had been thoroughly canvassed for the sale of the same; to that end said defendants, Robens and Tucker had prior thereto established headquarters at St. Louis for the sale of the same in said States and adjoining territory and said territory thoroughly canvassed for such sales."

The evidence showed the following state of facts: Plaintiff was a physician. The defendant Tucker was the patentee of a certain apparatus for applying counter-irritants to relieve neuralgia and superficial pain.

He also had a secret formula to be used therewith. Prior to the time of his meeting the plaintiff, he had assigned his patent rights in Missouri and Kansas and some other territory to defendant Robens, for whom he was selling the instruments as agent. He came to Kansas City the latter part of January or first part of February, 1904, stopping in several towns between St. Louis and Kansas City to sell instruments enough to pay expenses. He sold perhaps thirty of them altogether on this trip. After reaching Kansas City he sold a good many of them to doctors, and among others to the plaintiff. Tucker had made his living selling these instruments for fifteen or sixteen years, having sold on an average nearly two thousand a year. He demonstrated the apparatus on the plaintiff, who was much interested in it and invited Tucker to make headquarters at his office while in Kansas City. Soon after this the question arose as to whether Tucker would not sell and plaintiff buy certain territory for the sale of the instruments. Negotiations followed in which plaintiff Tucker and the former's attorney, took part, and which resulted in a contract for purchase and sale of the patent rights for the State of Kansas at the price of $1,000, on April 25, 1904. Five days later a contract was made for the State of Missouri at the price of $2,000. These contracts were drawn up by plaintiff's attorney, who was looking after plaintiff's interests, and they were practically identical except as to the territory covered and the consideration. These contracts went into considerable detail as to the terms and conditions of the transaction and many representations made by Tucker were written into them so as to protect plaintiff. They also contained the following:—"It is further agreed that the first party shall, at the date of the signing of this contract, disclose to the second party the formula herein mentioned and the second party shall have until such time as this contract shall be consummated, in which to test the

liquid compounded therefrom, and that said formula will produce the same liquid as now used by the first party in the apparatus for applying irritants as is now exhibited and sold by him, and that said liquid will give the same results."

Defendant Tucker testified that immediately after the execution of the first of these contracts, he delivered to plaintiff a copy of the secret formula, written out by himself, in accordance with the terms of the contract. Plaintiff testified that Tucker at once refused to disclose the formula and continued to refuse until the money was put up in escrow a month later. Plaintiff admitted, however, that Tucker prepared some of the liquid in his office and at his home, and that plaintiff used it during this time. On June 3, 1904, the necessary assignments had been received from defendant Robens, and plaintiff, his attorney and Tucker went to the Union National Bank where the $3,000 was deposited in cash.

In order to make the plaintiff safe in the assignment to him it was necessary to wait for three months to see that there had not been any prior assignment. It was to that end that the consideration ($3,000) was deposited with the defendant bank, which has no interest in the case save as holder of the money. On July 1, 1904, the assignments to plaintiff were recorded in the patent office and the escrow therefore terminated October first following. The evidence as to the representations made by Tucker during the negotiations resulting in the contract, was not so conflicting as that which occurred after the deposit of the consideration money on June 3rd. The evidence in plaintiff's behalf tended to show that the formula was not practical; that it burned patients so as to be unendurable and that it was a "fraud." So that plaintiff notified the bank not to turn over the money to defendant Tucker and tendered a re-assignment of the rights which were assigned to him.

We have gone over the evidence and conclude that

in order to sustain the judgment of the trial court we do not need to call to aid the rule that in conflicting evidence the appellate court is inclined to defer to the finding of the trial court. From the actions and conduct of the plaintiff himself, together with conceded facts, the judgment could not have been otherwise than that rendered.

In the first place, the plea of ignorance is not made in behalf of plaintiff and could not well have been made, since he is a physician and was dealing in a medical cure. In the second place, he had every opportunity to examine into the worth of his purchase before he made it, and to observe its workings so as to ascertain for himself whether it was a practical cure or was a fraud. In the third place, he operated the apparatus on patients and he sold many in different places through a space of many months without complaint. On the contrary he wrote defendant Tucker frequently in praise of the cure and apparatus. It would be difficult to ask more complete satisfaction than he expressed. After having knowledge and experience with the cure for several months he wrote on June 16, 1904, a letter of commendation to defendant, saying: "I have had the proposition before me for nearly two months, and during that time have investigated it very thoroughly, from both a medical and legal stand-point, and have found it satisfactory in every way. Regarding your part in the matter, all of your statements and representations relating thereto have been entirely borne out by facts."

Again on the next day he gave defendant the following commendation addressed to Albert Edwards, of Omaha: "The bearer of this note is Mr. Wm. L. Tucker, whom I have had considerable business with in the last four months. I have found him a perfect gentleman in every respect, and the matter which he has for sale, I have thoroughly investigated, and to say it meets every point claimed for it is only expressing its worth too

mildly. I have purchased the letters patent and formula for Missouri and Kansas. Would be glad to give you any further information I can." Again, on September 28th, he wrote: "Camfield is doing well the last day or two in St. Joe. He has demonstrated on several cases the merits of this treatment without a single failure, and they are taking hold of it and I believe he will sell the county to a druggist." Again, in October, he wrote to defendant that he was trying to sell the State of Kansas to a "Kansas doctor."

These are by no means all of his letters. He wrote others, never intimating that he had been cheated or defrauded in his purchase. No sign of dissatisfaction was made until finally it begun to appear to him that he was not making the success nor the money he expected. In short, his whole case is, in reality, based on the fact that he did not prove to be a success in disposing of the cure. But, in addition to all this, after he had been dealing with the cure for months, he aided defendant in selling the State of Nebraska;—on August 29th, he gave a written acknowledgment of the receipt of a commission paid to him by defendant. In aiding in this sale he wrote defendant: "Dear Tucker:—Yours received this a. m., and Dr. Reynolds entertained this p. m. I took him over the route in good fashion. I believe the sale is clinched. He said he made the trip to Kansas City to see me to get my opinion. I went the limit and left him happy. I believe the Doctor is in earnest. Shall write you again."

When one comes into a court of equity to rescind a contract he must be able to show as a primary condition to his right that he has been diligent and that he has been prompt in disavowing the obligation into which he alleges he has been fraudulently led. He cannot lie by, undertake to dispose of his purchase to others, and then, after failure to entrap them as he claims to have been himself entrapped, seek relief in equity. In Tay-

lor v. Short, 107 Mo. 385, it is said that "Whenever, upon discovery, he does treat the matter in the latter way, either by waiving the fraud in express terms or impliedly by continuing to deal with the property or proceeds emanating from that fraud, then the right to rescind is gone. Negotiations or dealings with the fraudfeasor, respecting the subject-matter of the fraud after discovery, are fatal to the right of repudiation." The court further said that afterwards discovering a new incident of the fraud will not revive the right of repudiation which has been once waived. The party alleging he was defrauded "is not at liberty to hesitate and delay, and wait for a future view of his own convenience or the market value of the property." [Hart v. Handlin, 43 Mo. 171.] It is too late to complain, "the purchaser having examined the premises before the sale was concluded, and occupied them a month or so without manifesting discontent. The law expects purchasers to exercise a reasonable degree of vigilance in looking after their affairs, and that they will act with reasonable promptitude." [Dougherty v. Stamp, 43 Mo. 243; Melton v. Smith, 65 Mo. 315.] Each of the courts of appeals has given expression to the same rule in a variety of cases, involving most every phase of fraud claimed as a ground of rescission. [Cahn v. Reid, 18 Mo. App. 115; Steam Co. v. Gas Co., 60 Mo. App. 148; Hull v. Beard, 80 Mo. App. 277; Funding Co. v. Heskett, 125 Mo. App. 516.]

The trial court, doubtless with a view of affording every opportunity to plaintiff to make out a case, permitted an amendment to the bill, alleging that plaintiff had not been furnished the proper formula. Passing by any supposed right to thus amend at that stage of the proceedings, it is manifest that, under the rules to which we have referred, it could work no change in the result.

Saller v. Shoe Co.

We regard the correctness of the view of the trial court as being scarcely debatable, and the judgment will be affirmed. All concur.