J. E. ROARK, Respondent, v. CITY TRUST, SAFE DEPOSIT AND SURETY COMPANY et al., Appellants.

Kansas City Court of Appeals, May 4, 1908.

1. **FIDELITY INSURANCE: Surety Bond: Interpretation.** A contract of suretyship against loss of employees is for all practical purposes a contract of insurance and is governed and construed as an insurance policy, to-wit, more strongly against the company.

2. ————: ————: **Fraud: Taking Effect.** Application for a surety bond was made on the twenty-third of July with request that

130 App.—26

it extend back to the fifteenth of that month. On August 15 it was endorsed "approved." The bond, however, was not delivered owing to an immaterial misunderstanding. On the twenty-sixth of September the employee defaulted. After investigating it the employer inquired of the company what was delaying the bond and promptly on the fourth of October the bond was forwarded. After its receipt the employer wrote the company giving a full account of the default. *Held*, the contract was complete and binding from the date of approval long before the shortage and before it can be claimed the employer was guilty of any deceit or fraud.

3. ——: ——: ——: Rescission: Waiver. The employer's letter, fully disclosing the default, was forwarded on October 12. The company continued the correspondence to the following spring with no claim of fraud or offer to return the premium, and, when finally sued, for the first time set up fraud. *Held*, that promptness in the disavowal of the contract is a prime condition to its repudiation and the alleged fraud was waived.

4. ——: ——: Notice of Default: Waiver. A surety bond provided for notice as soon as any act of omission or commission came to the employer's knowledge. A default was ascertained on the twenty-sixth of September. The bond was issued on the fourth of October; notice of default was dated October 12; correspondence continued to the following spring without any complaint of insufficiency of the notice. *Held*, such insufficiency, if any, was waived.

Appeal from Johnson Circuit Court.—*Hon. Nick M. Bradley*, Judge.

AFFIRMED.

*Paul V. Janis* and *O. L. Houts* for appellants.

(1) It was Roark's duty to disclose to the surety company any fact, materially affecting the risk, coming to his knowledge prior to his actual notification that the application had been accepted by the surety. Bank v. Owen, 101 Mo. 582; Harrison v. Insurance Co., 8 Mo. App. 41; Bank v. Traube, 6 Mo. App. 221; 1 Story's Equity Jurisprudence (13 Ed.), sec. 215, p. 234; 1 Joyce on Insurance, sec. 107, p. 166; 1 Brandt on Suretyship Guaranty (3 Ed.), secs. 475, 476; Insurance

Co. v. Chase, 53 L. R. A., p. 510; Insurance Society v. McElroy, 83 Fed. 636; Bank v. Fidelity and Casualty Co., 89 Fed. 819; 1 May on Insurance, p. 385, sec. 190; 1 May on Insurance, pp. 76, 77, secs. 43g, 43h.   (2) There must be a notification of acceptance of the application before a contract can exist.   Making an application and paying the premium does not constitute a contract of insurance, nor does delay in accepting make a contract.   Travis v. Insurance Co., 104 Fed. 488; Horton v. Insurance Co., 151 Mo. 620; Kilcullen v. Insurance Co., 108 Mo. App. 61; Pace v. Life Assur. Society, 113 Fed. 13; Mohrstadt v. Insurance Co., 115 Fed. 81; Miller v. Insurance Co., 111 Fed. 465; Lungstrass v. Insurance Co., 48 Mo. 201; Wallingford v. Insurance Co., 30 Mo. 46; Misselhorn v. Life Ass'n, 30 Fed. 545; May on Insurance (4 Ed.), sec. 43h, p. 76.   (3)   The fact that the subject-matter (Clary's honesty) ceased to exist before the contract was consummated, avoided the bond.   Paine v. Insurance Co., 51 Fed. 689; 1 May on Insurance (4 Ed.), sec. 190, p. 385; 1 Joyce on Insurance, sec. 107, p. 166; 16 Am. and Eng. Ency. Law (2 Ed.), p. 847; Worth v. Insurance Co., 64 Mo. App. 587; Wallingford v. Insurance Co., 30 Mo. 46.   (4)   The plaintiff set out the bond *in haec verba* in his petition.   The bond contained a condition, numbered 6, to the effect that if the plaintiff at the time of the execution of the bond knew that the employee in question was a defaulter, then the bond should be void as to such employee.   Plaintiff admitted at the trial, his knowledge of Clary's dishonesty prior to the execution of the bond and should have been nonsuited.   Hough v. American Surety Co., 90 Mo. App. 482.

*J. W. Suddath* for respondent.

(1)   A contract of suretyship against loss by dishonesty of employees is a contract of insurance, and

the company issuing it is an insurance company, and the company and contract must be governed and construed under the insurance law. 15 Am. and Eng. Ency. Law (2 Ed.), p. 1; People v. Rose, 174 Ill. 310; People v. Fid. & C. Co., 153 Ill. 32; Shockman v. U. S. System Co., 92 Wis. 366, 66 N. W. 526; American Surety Co. v. Pauly, 170 U. S. 138; Ice Mfg. & Cold Storage Co. v. Bond & Trust Co., 75 S. W. 197. (2) All provisions of the policy must be construed most strongly against the company and in favor of plaintiff, insured. Shoe Co. v. Casualty Co., 172 Mo. 149; Am. Surety Co. v. Pauly, 170 U. S. 133; Ice Mfg. & Cold Storage Co. v. Bond & Trust Co., 75 S. W. 197; 13 Am. and Eng. Ency. Law (2 Ed.), p. 10; Fidelity Co. v. Bank, 25 S. E. 392. Insurance policies must be liberally construed in favor of the insured. Howerton v. Insurance Co., 105 Mo. App. 583. (3) A policy antedated covers loss occurring prior to delivery and actual date of policy. Stockman v. Credit System Co., 66 N. W. 528; 1 Joyce on Insurance, sec. 105; Worth v. Insurance Co., 64 Mo. App. 583; Insurance Co. v. Folsam, 85 U. S. 827; Insurance Co. v. Insurance Co., 3 Am. Rep. 301; Hubbard v. Insurance Co., 11 Am. Rep. 125. (4) When a contract of insurance has been completed by the party applying doing all that is required to be done on his part, although the agent acting for the company has not power to issue a policy, the risk commences from the time of making such contract if there be no stipulation to the contrary. Palm v. Insurance Co., 20 Ohio 529; Krum v. Insurance Co., 40 Ohio St. 225; Worth v. Insurance Co., 64 Mo. App. 583. (5) When a jury is waived and the cause is tried by the court, its finding has the conclusiveness of a verdict, and the higher court must presume the facts to be as found. Rogers v. Hopper, 94 Mo. App. 437; Creighton v. M. W. A., 90 Mo. App. 378; Baumhoff v. Railroad, 171 Mo. 120;

Hanlan v. McManus, 100 Mo. 124; Swayze v. Bride, 34 Mo. App. 413; Sinclair v. Railway, 70 Mo. App. 588.

ELLISON, J.—The plaintiff was superintendent of the Metropolitan Life Insurance Company and had engaged in service, in places of trust, a number of employees, the one concerned in this case was John W. Clary. He desired to be indemnified against loss through the dishonesty of Clary, if such misfortune should occur. The latter applied in writing to defendant as a surety company for a bond indemnifying plaintiff. A bond was afterwards executed by defendant to plaintiff, dated July 15, 1904. Afterwards, in the latter part of September, Clary embezzled funds of the company in the sum of $494.55, and absconded. This action is founded on that bond and plaintiff recovered judgment in the trial court.

Written application was made for the bond on July 23rd with the request that it be dated back to July 15th, that being the time of the last examination of Clary's account with his employer. Plaintiff signed an employer's statement by filling out a blank furnished by defendant. The application and statement were delivered by plaintiff to defendant's agent at St. Louis on July 25th, and the premium, $3.75, was paid to him for which he gave a written receipt: "For premium on bond, as follows: . . . J. W. Clary from 7-15-04, $500. Premium $3.75." The application made by Clary and delivered by plaintiff contained the names of persons whom he gave as reference and the trial court found that the evidence showed a valid agreement for a bond if these references responded satisfactorily to defendant's inquiries. It further found that such responses were favorable and that they were received by defendant about August 3rd and that on August 15th the application was approved by the endorsement thereon: "Approved 8-15-1904. J. W. Anderson." Though the application was thus approved, the surety

bond was not issued and forwarded to plaintiff until October 4th. This delay was occasioned, not by a desire for further inquiry, but for the reason that defendant had, in some way, become impressed with the idea that plaintiff wished it to hold the bond until other applications which were to be made had been received. The defendant expressed regret at the delay.

Plaintiff's office was at Sedalia, while Clary's headquarters were at Warrensburg, the distance being about forty miles. Plaintiff was notified on September 26th that Clary had absconded and on next day he went to Warrensburg to investigate and examine his accounts. Realizing that he had not yet received the Clary bond, plaintiff, on September 27th, next day after learning of his having absconded, wrote to defendant's agent at St. Louis asking if the application had been approved and if so when he might expect the bond. He said nothing as to what he had learned about Clary. Several days later, on October 4th, plaintiff wrote to defendant at Philadelphia asking if the application had been approved and what was causing the delay, and if it was for lack of replies from references he could perhaps assist in getting such replies. In this letter plaintiff also failed to state that he had information that Clary had absconded.

It was in answer to this last letter that defendant wrote under date of October 6th that it had sent the bond on October 4th and had not sent it sooner because of the impression spoken of above and expressing regret at the delay. Plaintiff received the bond and then, on October 12th, he wrote to both the agent at St. Louis and to defendant at Philadelphia notifying them that Clary had absconded on September 26th, leaving a shortage of $494.55. On the next day, October 13th, the agent at St. Louis acknowledged receipt of the notice and asked plaintiff to send any other information

he might obtain. There was further correspondence to which we will refer further on.

The defendant contends that it was led to issue the bond through the fraud and deception of plaintiff in the letters asking that the bond be sent to him when he knew of the defalcation and fraudulently suppressed such knowledge. The contention is that no valid contract was made by defendant. A contract of suretyship against loss by dishonesty of employees is, for all practical purposes, a contract of insurance, and the contract must be governed and construed as an insurance policy. [Shockman v. U. S. System Co., 92 Wis. 366; Champion Ice Co. v. American Bond Co., 115 Ky. 863, 75 S. W. 197]. An insurance company's contract, drawn by such company, is to be construed most strongly against the company. [Wertheimer Shoe Co. v. Casualty Co., 172 Mo. 135; American Surety Co. v. Pauly, 170 U. S. 133.] And no reason exists why the same rule should not apply to a bond surety company giving bond to secure employers against loss by dishonesty of employees. With this preliminary statement of the law, we will ascertain whether there was a valid contract between the parties and when it took effect.

When an application for fire insurance is made and the terms thereof agreed upon between the company's authorized agent and the insured, and a policy agreed to be issued embodying such terms, the agreement is complete; even though credit be extended for the premium. [Baldwin v. Insurance Co., 56 Mo. 151; Worth v. Insurance Co., 64 Mo. App. 583; Palm v. Insurance Co., 20 Oh. 529; Krum v. Insurance Co., 40 Oh. St. 225. If a policy is afterwards issued it relates back to the time specified for the insurance to begin and covers a loss within that time, and from the time of issuance its conditions become effective. [The cases of Horton v. Insurance Co., 151 Mo. 604, and Kilcullen v. Insurance Co., 108 Mo. App. 61, are so unlike this in essen-

tial features as not to be in any way applicable.] There is no reason why such rule should not apply to a bond surety company like this defendant, which is no less than an insurer against loss by the dishonesty of employees. In this case the evidence made it appear to the trial court, and it is clear to us, that the application for this suretyship for plaintiff's employee was made and all terms agreed upon, even to the payment, at the time, of a cash premium, and the contract was to become complete and it would become binding when satisfactory responses should be received by defendant to the references to whom written inquiries had been addressed. These were received, were found to be satisfactory and, as before stated, the application was endorsed as approved on August 15th. The contract was complete and it became binding from that time. Defendant's answer admits it was to be bound when satisfied concerning the honesty of Clary, and it admits that it became satisfied. The 15th of August was more than six weeks before any knowledge by plaintiff of Clary's shortage and before it can be claimed that plaintiff was guilty of any deceit or fraud.

Plaintiff thus having a complete and valid contract of insurance against loss through Clary's dishonesty, was not guilty of fraud in not disclosing his knowledge of such loss when he wrote on September 27th and October 4th, inquiring why the bond had not been issued. He doubtless wanted the bond in his possession. He knew that he had come to an agreement about the insurance, that he had paid for it and done all that was incumbent upon him to do. His contract was in every way complete and there is no room for the charge of fraud in his asking for that to which he was entitled. This is made manifest by the suggestion that if plaintiff, in his letters to defendant asking why the bond had not been issued, had stated that Clary had absconded, defendant would still have been obliged to

issue the bond. Knowledge or ignorance of the defalcation did not in any way affect the contract, for that was already in binding existence and force. We may concede, or rather infer, that plaintiff feared that knowledge by defendant of the defalcation might cause it to refuse to issue the bond and for that reason he did not mention it in his letters. But that cannot affect the legal status of the contract. In two fire insurance cases in this State where application for insurance had been made and terms agreed upon, though the premium was not paid, and before a policy was issued, a loss occurred; it was held that the insured in asking that the policy be issued was under no obligation to disclose his knowledge to the company that the fire had then occurred. [Baldwin v. Insurance Co., 56 Mo. 151; Worth v. Insurance Co., 64 Mo. App. 583.]

But, even if we were wrong as to what has just been written, another consideration in respect to the insistence of fraud disposes of it adversely to defendant in so far as concerns its right to complain. As already stated, the ground for the charge of fraud rests upon the deceit of plaintiff in his letter of October 4th asking why the bond had not been sent and making various statements therein calculated to cause defendant to think nothing was wrong at that time. Yet when plaintiff gave the notice on October 12th, he disclosed in such notice that he had knowledge of the defalcation and absconding of Clary when he wrote the letter of October 4th, in which it is claimed were the fraud and concealment. Defendant was thereby informed of whatever concealment and deception had been practiced and yet chose either to regard it as not a fraud, or else to waive it. If a fraud it was discovered by this notice of October 12, which was the time defendant should have repudiated the bond and offered to return the premium. It will not be permitted to first ignore the

fraud, retain the premium and carry on negotiations for proof of amount of loss for months, and then, when finally sued, announce for the first time a claim of fraud. Promptness in disavowal of a contract is a prime condition to its repudiation. [Taylor v. Short, 107 Mo. 384.]

But it is urged that plaintiff failed to comply with the terms of the bond in regard to giving notice of defalcation. It was provided that "As soon as any act of omission or commission on the part of any employee tending to fix a liability on the part of the company shall come to the knowledge of the employer . . . it shall be the duty of the employer to at once notify the company in writing of said act," etc. On the 12th of October, as we have already stated, plaintiff wrote of the whole matter to the agent at St. Louis and to the defendant at Philadelphia. Was this delay sufficient, under the circumstances of delay in issuing the bond, to avoid the policy? It is certain that defendant either thought it was not, or else determined to waive it, as we shall proceed to show. In thus showing a waiver, we avoid the necessity of passing on the question argued by counsel whether the want of notice was made an issue by the pleadings, considering the allegations of both the petition and the answer.

The notice which plaintiff sent on the 12th of October to both the agent at St. Louis and defendant at Philadelphia, informed them of the time when he first learned of anything wrong with Clary, viz.: on the night of the 26th of September. It informed them of his going to Warrensburg and investigating the account and the report he made to his company. He gave particulars of information he had received as to Clary's departure, as well as his photograph, with many other suggestions which might be of assistance to defendant. In acknowledging the receipt of this notice no suggestion was made or intimation given to plaintiff

that it was out of time. On the contrary, the clear inference from the face of correspondence which extended over a period from October, 1904, until April, 1905, is that defendant only wanted to make sure of the amount of the liability. In this acknowledgment of receipt of the notice, defendant's agent asked for any further information plaintiff might have. In the next (October 18), he acknowledges receipt of Clary's photograph and asked that a warrant for Clary's arrest be sworn out at Warrensburg and to have an officer there notify the chief of police at St. Louis. He then stated the necessity of his examining Clary's books and papers at Warrensburg and asked plaintiff to fix a time to meet him at that place. Telegrams and letters were exchanged as to this meeting at any time convenient to defendant's agent. On October 22, the agent wrote suggesting that plaintiff take out a warrant for Clary's arrest in Kansas City if he should be located there. It appears from this letter that plaintiff and the agent each thought the other should swear out the warrant, and the agent complains that had prompt measures been taken (referring to a warrant) "possibly Clary would have been located and arrested before this time." But no complaint was made as to want of notice. Plaintiff sent the agent some information as to what the sheriff had done in effort to locate Clary and that he had written to the latter's father. On November 26, the agent acknowledged this and says "for all of which please accept thanks." He also asked if plaintiff will visit St. Louis soon, expressing a desire to meet him "and go over the matter of Clary's shortage, actions, etc."

Letters were received by plaintiff from the agent through the winter and into April, 1905, in which are apologies for delay in settlement and an admission that plaintiff had ground to complain. In no one of these is there any suggestion of a want of proper notice. On

the contrary, plaintiff, at defendant's request, went to additional trouble and expense in regard to showing the loss and its extent and in the endeavor to locate Clary. Under the law in this State this was a waiver of complaint on any ground of insufficiency of notice. The reasons for this statement of the law are given, with citation of authorities, in Bolan v. Insurance Co., 58 Mo. App. 225, and Dolan v. Insurance Co., 88 Mo. App. 666, and need not be gone over at this time.

For the several reasons herein we are satisfied with the judgment of the trial court, and hence affirm the judgment. All concur.