Long v. Vending Machine Co.

W. C. LONG, Appellant, v. INTERNATIONAL VENDING MACHINE COMPANY, Respondent.

### St. Louis Court of Appeals, July 15, 1911

1. RESCISSION: Contracts: Reasonable Time. It is absolutely essential that the party wishing to rescind should do so immediately upon discovering the bad faith of the one with whom he· has dealt. "Immediately" does not mean instanter, however, regardless of hindering conditions, but means a reasonable time, considering the conditions, not to deliberate on whether to rescind, but to do the things necessary in order to rescind.

2. ———: ———: ———: Facts Stated. In an action to recover back money paid as consideration for a contract giving plaintiff the exclusive right to operate and lease cigar vending machines in certain territory, which contract plaintiff claimed to have lawfully rescinded because of fraud in its procurement, where it appeared that plaintiff did not give defendant notice of the rescission until nearly three months after he had discovered the fraud, and that everything that was done by way of rescission, including consultation with counsel, could have been done in a few days, held, there was no room for fair-minded men to doubt that the delay which was allowed to elapse was unreasonable as a matter of law, and hence plaintiff was not entitled to recover.

Appeal from St. Louis City Circuit Court.—*Hon. Geo. H. Williams*, Judge.

AFFIRMED.

*Bond & Bond* for appellant.

What constitutes a reasonable time in which to rescind is a question of fact for the jury and ·not a question of law for the court.   Althoff v. Transit Co., 204 Mo. 166; Tower v. Pauly, 51 Mo. App. 83.

*Chester H. Krum* for respondent.

It is essential that one seeking to rescind shall[1] act promptly and at once upon obtaining information of the fraud, if fraud be the ground of rescission, indicate his disclaimer and offer to return whatever he may have received under the contract. Roark v. Trust Co., 130 Mo. App. 401; Implement Co. v. Ellis, 125 Mo. App. 692; Landon v. Tucker, 130 Mo. App. 704; Atthoff v. St. Louis Transit Co., 204 Mo. 166.

STATEMENT.—Action to recover back money paid under two contracts which plaintiff claims have been lawfully rescinded by him because of fraud in their procurement. At the close of his evidence, plaintiff suffered a non-suit, the court having given a demurrer to his evidence, and after unsuccessfully moving to set aside the non-suit, he appealed

On April 25, 1907, the defendant, being engaged in the business of manufacturing and selling an automatic or "coin in the slot" cigar vending machine, granted to plaintiff and one Diemler, jointly, "the exclusive right to operate, lease, rent and place" such machines in Lincoln and Pike Counties, Missouri, and agreed to furnish them free of charge ten machines of three slots each, or the equivalent in larger machines. As his share of the consideration for this grant plaintiff paid the defendant five hundred dollars. Five days later plaintiff paid defendant an additional thousand dollars, receiving therefor "rights" as to East St. Louis and vicinity and defendant's agreement to furnish him free of charge additional machines having an aggregate of sixty slots. The machines were to be delivered upon the written order of the plaintiff. With the first contract defendant delivered a machine to the plaintiff and he installed it in his barber shop where it proved quite successful at first. Plaintiff had many friends and they patronized it liberally while the novelty

lasted.    Defendant's agents also, with plaintiff's knowl-edge, patronized it heavily through the summer and fall of 1907, with a view to making it present a good earning record to prospective purchasers of "rights." During this time he signed letters for use by defendant in its advertising, discoursing eloquently on the great profit he had realized from the device in his shop and commending the defendant and its method of dealing with contract holders.    He made some effort to intro-duce the machine in his territories but without success, placing, according to his evidence, but two outside of his barber shop.    One of these two was destroyed by fire and never returned to the defendant.    The other was returned to the defendant for storage.    Prior to May 18, 1908, the defendant had been perfecting a more improved type of the machine and plaintiff arranged with it to receive the improved type instead of that he had contracted for.    On May 18, 1908, the defendant substituted one of the improved type for the old one which had been doing service in plaintiff's barber shop since April 25, 1907.    This substituted machine remained in plaintiff's barber shop down to the day of the trial, June 16, 1910.    He kept cigars in it until March, 1910.

In the summer of 1909, defendant tried to buy back the East St. Louis contract for five hundred dollars, but plaintiff refused to sell thinking that the contract was worth more.

In October, 1909, two years and nine months after he had purchased the "rights" from the defendant, plaintiff discovered the details of what appears to have been a fraud committed by the defendant and Diemler in procuring him to purchase said "rights."    Plaintiff did not at once rescind his contracts, or either of them, on discovering the fraud, but testifies that he consulted with a firm of lawyers and they considered the matter for two months and then said they did not see how they could possibly attend to the matter for him

at that time and advised him to go to his present able counsel. Pursuant to this advice he went to his present counsel about January 1, 1910, and twenty days thereafter they gave to the defendant notice of intention to rescind the contracts on the ground that they were obtained by fraud, and offered to return the machine in his barber shop and demanded the return of the money paid by him.

This suit was instituted on January 22, 1910.

CAULFIELD, J. (after stating the facts)—We are satisfied that the trial court did not err in giving the demurrer to plaintiff's evidence, it affirmatively appearing that without any excuse plaintiff delayed making his election to rescind for nearly three months after discovering the details of the alleged fraud. It is absolutely essential that the party wishing to rescind should do so *immediately* on discovering the bad faith of the one with whom he has dealt. [Cahn v. Reid and Bungardt, 18 Mo. App. 115, 123; Taylor v. Short, 107 Mo. 384, 393, 17 S. W. 970; Hart v. Handlin, 43 Mo. 171, 175; Lapp v. Ryan, 23 Mo. App. 436, 439; Robinson v. Siple, 129 Mo. 208, 222, 31 S. W. 788; Roark v. Trust, Safe Deposit & Surety Co., 130 Mo. App. 401, 410, 110 S. W. 1; Landon v. Tucker, 130 Mo. App. 704, 710, 107 S. W. 1037.] Of course "immediately" does not mean *instanter*, regardless of hindering conditions. It may be said to mean a reasonable time considering the conditions. [Althoff v. Transit Co, 204 Mo. 166, 102 S. W. 642.] But a reasonable time to do what? Not to deliberate on whether to rescind, but to do the things necessary in order to rescind. The rule contemplates prompt action, and reasonable time means a period in which the rescission could occur allowing only for some particular condition hindering, such as sickness or other adventitious circumstance. The time is given not to determine whether to rescind,

but is given to be used in diligent effort to rescind. [Moss v. King, 212 Mo. 578, 585, 111 S. W. 589.]

Now it may be conceded that in the exercise of due diligence the party desiring to rescind might take time to consult with his attorney and have him prepare a notice of rescission, as well as to do whatever else is necessary in the premises, but it is beyond all reason to consume nearly three months in that simple matter. Everything that was done in this case by way of rescission could have been done in a few days at the most. There could not possibly be any room for fair minded men to doubt that nearly three months were not reasonably necessary for the plaintiff to do all that he did do in order to rescind. It may therefore be concluded that the delay which was allowed to elapse was unreasonable as matter of law and that for this reason the trial court properly gave the demurrer to plaintiff's evidence. [Tower v. Pauly, 51 Mo. App. 75; Steam Heating Co. v. Gas Fixture Co., 60 Mo. App. 148, 154.]

The judgment is confirmed. *Reynolds, P. J.,* and *Nortoni, J.,* concur.